HENRI GARROU, PLAINTIFF-APPELLANT, v. TEANECK TRYON COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY; THE GREAT ATLANTIC & PACIFIC TEA COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY; JAMES T. WELSH, MUNICIPAL MANAGER OF THE TOWNSHIP OF TEANECK; ALLEN M. KNOWLES, BUILDING INSPECTOR, AND GEORGE M. CADY, BUILDING SUPERINTENDENT, DEFENDANTS-RESPONDENTS.

Argued December 15, 1952—Decided January 19, 1953.

296

*Mr. Milton T. Lasher* argued the cause for the appellant.

*Mr. George P. Moser* argued the cause for the respondent The Great Atlantic & Pacific Tea Company.

*Mr. John J. Deeney* argued the cause for the respondents Welsh, Knowles and Cady.

*Mr. Charles Rubenstein* argued the cause for the respondent Teaneck Tryon Company (*Messrs. Rubenstein & Glick*, attorneys; *Mr. Leo I. McGough* on the brief).

The opinion of the court was delivered by

JACOBS, J. This is an appeal by the plaintiff, certified by this court on its own motion, from judgments for the defendants entered in the Law Division at the close of the plaintiff's case.

The defendant Teaneck Tryon Company is the owner of a tract of land composed of six lots and located at the southwesterly corner of Tryon Avenue and Teaneck Road, in the Township of Teaneck. Under the township's zoning ordinance five of the lots nearest Teaneck Road are within the business zone whereas the sixth is within the Class A residential zone. The plaintiff is the owner of a home in the residential zone, located at 38 Tryon Avenue and adjoining the sixth lot. In 1950 the Teaneck Tryon Company announced that it planned to erect a shopping center with parking facility on its tract and that the defendant The Great Atlantic & Pacific Tea Company would occupy a portion thereof. In July 1950 the plaintiff's attorney wrote to the defendant James T. Welsh, Municipal Manager of Teaneck, referred to the proposed construction, and stated that he believed that the business zone did "not embrace the

property which will be used for parking." In August 1950 he wrote to Teaneck Tryon Company advising that the proposed use of "that portion of your property which fronts on Tryon Avenue as a parking lot" would violate the zoning ordinance and would result in legal proceedings.

Under date of June 25, 1950, Teaneck Tryon Company filed application for a building permit to construct a building at 1548, 1550, 1552, 1560 Teaneck Road in accordance with plans and specifications. The application was approved, construction was begun shortly thereafter, and the building was completed in April 1951. The building is entirely within the business zone, and under date of May 7, 1951 the defendant George M. Cady, Superintendent of Buildings, issued a certificate of occupancy which states that "Permission is hereby granted pursuant to Ordinance No. 826, Section 12 and other applicable ordinances to Teaneck Tryon Co. to occupy building located at 1552 and 1560 Teaneck Rd. for the following purpose only—stores." It is now occupied by The Great Atlantic & Pacific Tea Company and other tenants. The abutting land along Tryon Avenue including lot six has been paved and is used as a parking lot adjunct to the building; a sign prominently displayed on the building advertises A & P coffee and reads "Free Parking." Under date of April 19, 1951 the plaintiff's attorney wrote a second letter to the municipal manager complaining about the proposed use of the parking lot in the residential zone. A reply dated April 23, 1951 notified him that the matter would be discussed with the township attorney and he would be advised.

In due course thereafter the plaintiff filed a complaint, later amended, in the Law Division. The amended complaint alleged that the use of the land, within the residential zone and adjoining his home, for parking purposes, was in violation of the zoning ordinance and had caused disturbance, annoyance and discomfort to him and members of his family and had greatly depreciated the value of his property for residential purposes. It sought (1) an injunction restrain-

ing the private defendants, The Great Atlantic & Pacific Tea Company and Teaneck Tryon Company, from using the land in the A residence zone for parking purposes, plus damages, (2) an order compelling the defendant municipal officials to enforce the zoning ordinance against The Great Atlantic & Pacific Tea Company and Teaneck Tryon Company, and (3) an order modifying and amending the certificate of occupancy to permit only the portion of the premises within the business zone to be used for business purposes. At the trial the testimony on the plaintiff's behalf, including the reasonable inferences therefrom in his favor (*Dobrow v. Hertz*, 125 *N. J. L.* 347, 348 (*E. & A.* 1940)), adequately established that lot six, located within the A residence zone, was being used by the private defendants as a parking lot adjunct to the building and that such use had caused serious inconvenience, annoyance and discomfort to the plaintiff and his family and had depreciated the value of his property. Nevertheless, the court granted the motion to dismiss made at the close of the plaintiff's case, and the present appeal is from the ensuing judgments entered in favor of the defendants.

## I.

The first contention advanced by the defendants in support of the lower court's action is that Teaneck's zoning ordinance, adopted prior to the 1947 Constitution, did not and legally could not regulate the use of vacant land such as lot six. Under the current decisions of this court it may no longer be doubted that reasonable zoning regulations may be justified as an exercise of the police power, even apart from the express constitutional provision therefor. *Schmidt v. Board of Adjustment, Newark*, 9 *N. J.* 405 (1952); *Ward v. Scott*, 11 *N. J.* 117 (1952); *Fischer v. Township of Bedminster*, 11 *N. J.* 194 (1952). In the exercise of the police power vacant land as well as buildings may be subjected to zoning regulations; indeed, it would seem incongruous to divide a community into residential

and business zones and then permit business without restriction in the residential zone on land bearing no structure. It is true that under the more restrictive view of zoning which had been entertained prior to our *Constitution of 1947*, doubts had been expressed as to the extent of the zoning power over vacant lands; nevertheless, there were decisions of the former Supreme Court which had unequivocally asserted such power. See 420 *Broad Ave. Corp. v. The Borough of Palisades Park*, 137 *N. J. L.* 527, 529 (*Sup. Ct.* 1948); *Ridgewood Air Club v. Bd. of Adj. of Ridgewood*, 136 *N. J. L.* 222, 226 (*Sup. Ct.* 1947). In any event, it had been explicitly determined by the Court of Errors and Appeals that where, as here, a tract contained a business structure and vacant land used in conjunction therewith for parking or otherwise, the entire tract was properly subject to zoning restrictions. See *Burmore v. Champion*, 124 *N. J. L.* 548, 549 (*E. & A.* 1940); *The Midland Park Coal & Lumber Co., Inc. v. Terhune*, 137 *N. J. L.* 603 (*E. & A.* 1948).

In the light of the foregoing it is evident that even under the then controlling decisions the township had ample power to prohibit the extension of the private defendants' business activity onto the land in the abutting residence zone; and the ordinance sufficiently evidences the township's intent to exercise that power to its full permissible extent. *Cf. Lappas v. Board of Adjustment of the Borough of Westwood*, 23 *N. J. Super.* 553 (*App. Div.* 1952). Thus section III of the ordinance provides that in a residence zone no building "or premises" shall be used except as therein permitted and section XVII provides that no "land shall be occupied or used" and no building shall be erected or altered until a certificate of occupancy is issued stating that the "premises" or building complies with the ordinance. Accordingly, we determine that the plaintiff's showing was sufficient to withstand a motion to dismiss grounded upon the inapplicability or invalidity of the ordinance and that the lower court erred in its ruling to the contrary.

## II.

The second contention advanced by the private defendants is that the plaintiff has no standing to obtain an equitable injunction against violation of the zoning ordinance. See, *Srager v. Mintz*, 109 *N. J. Eq.* 544 (*E. & A.* 1932); *Dinkins v. Kip*, 110 *N. J. Eq.* 486 (*Ch.* 1932). The plaintiff is not acting simply as a citizen or taxpayer of the community in his quest to prevent further violation of the zoning ordinance. He is a property owner whose home adjoins the premises where the violation is occurring and he alleges special damages in that he and his family are being discommoded and his property depreciated. His interest is distinct from and greater than that of the community as a whole and we perceive no reason for denying him fair opportunity to vindicate and protect that interest; we consider that such denial would not only operate unjustly as to him but would also retard the public interest. *Cf. Speakman v. Mayor and Council of North Plainfield*, 8 *N. J.* 250, 258 (1951).

In *Mayor, &c, of Alpine Borough v. Brewster*, 7 *N. J.* 42, 52 (1951), this court recently recognized the general rule that an individual may obtain an equitable restraint against violation of a zoning ordinance where he has "sustained special damage over and above the public injury." This rule is well established in other jurisdictions (129 *A. L. R.* 885 (1940)) and has properly been applied in our Chancery Division under circumstances comparable to those presented in the instant matter. See *Frizen v. Poppy*, 17 *N. J. Super.* 390, 393 (*Ch. Div.* 1952); *Yanow v. Seven Oaks Park, Inc.*, 15 *N. J. Super.* 73, 80 (*Ch. Div.* 1951). See also *Stokes v. Jenkins*, 107 *N. J. Eq.* 318 (*Ch.* 1930). We are satisfied that the plaintiff's showing was sufficient to withstand the motion of the private defendants to dismiss for lack of standing to enjoin.

At the oral argument it was suggested by the plaintiff that if he is ultimately granted injunctive relief by the court,

his claim for damages against the private defendants would thereafter be triable separately before a jury. *Cf. O'Brien v. Baldwin*, 2 *N. J. Super.* 134 (*App. Div.* 1949). However, there would be no need for such delayed disposition. Any damage which has been incurred prior to the injunctive relief could readily be determined by the court, as an incident to the exercise of its equitable jurisdiction and without impairment of any constitutional right to trial by jury. *Steiner v. Stein*, 2 *N. J.* 367 (1949).

### III.

The lower court dismissed the plaintiff's claim that the defendant municipal officials be directed to enforce the ordinance against the private defendants, stating that the sole remedy for their failure to perform their public duty was by indictment. The plaintiff contends that this ruling and its stated ground were erroneous. See *Jones Co. v. Guttenberg*, 66 *N. J. L.* 659, 670 (*E. & A.* 1901); *In re The Trenton Water Power Co.*, 20 *N. J. L.* 659, 660 (*Sup. Ct.* 1846); *State v. Holliday*, 8 *N. J. L.* 205, 207 (*Sup. Ct.* 1825). See also *Lay v. Hoboken*, 75 *N. J. L.* 315 (*Sup. Ct.* 1907); *State v. Londrigan*, 4 *N. J. Misc.* 574, 576 (*Sup. Ct.* 1926). In his claim against the private defendants the plaintiff invoked traditional equitable jurisdiction cognizable in the Superior Court. See *Const.* 1947, *Art. VI, Sec. III, par.* 2; *Art. VI, Sec. III, par.* 4; *O'Neill v. Vreeland*, 6 *N. J.* 158 (1951). In his claim against the defendant municipal officials the plaintiff invoked the procedure in lieu of prerogative writs, in this instance *mandamus*, equally cognizable in the Superior Court. See *Const.* 1947, *Art. VI, Sec. V, par.* 4; *Rule* 3:81–2. However, the defendants, citing *Lanni v. City of Bayonne*, 7 *N. J. Super.* 169 (*App. Div.* 1950), urge that *mandamus* should never be recognized as a proper means of compelling municipal officials to enforce the terms of zoning ordinances.

In our State, perhaps more than any other, the prerogative writ has been used as a comprehensive safeguard against official wrong. See *Ward v. Keenan*, 3 *N. J.* 298 (1949); *Haines v. Burlington County Bridge Commission*, 1 *N. J. Super.* 163, 171 (*App. Div.* 1949); *Ferry v. Williams*, 41 *N. J. L.* 332, 338 (*Sup. Ct.* 1879). In the *Ferry* case Justice Dixon cited numerous cases in which our courts had, by way of exception to the more limited English rule, permitted private citizens to maintain proceedings designed to correct public misdoing and compel performance of public duty. In the course of his far reaching and oft-cited opinion he said:

> "These cases seem to indicate that with us the exception to the rule is extended so far as to justify this court in acting by *mandamus*, *certiorari* or *quo warranto*, at the instance of private persons, for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired. The general indifference of private individuals to public omissions and encroachments, the fear of expense in unsuccessful and even in successful litigation, and the discretion of the court, have been, and doubtless will continue to be, a sufficient guard to these public officials against too numerous and unreasonable attacks."

In *Beronio v. Pension Commission of Hoboken*, 130 *N. J. L.* 620, 624 (*E. & A.* 1943), the court broadly indicated that *mandamus* lies to command the performance of a public duty which ought to be performed (*Van Riper v. Board of Chosen Freeholders*, 137 *N. J. L.* 714, 716 (*E. & A.* 1948); *Reid Development Corp. v. Parsippany-Troy Hills Tp.*, 10 *N. J.* 229, 237 (1952)), although it carefully pointed out that in furtherance of essential justice the discretionary allowance of the remedy is subject to important and well-defined qualifications. Thus, the plaintiff's right and the defendant's duty must legally be clear and the remedy must be denied where, equity or paramount public interest so dictates or there is other adequate relief available.

*Beronio v. Pension Commission of Hoboken, supra.* But it is well recognized that the other relief must realistically be adequate and the theoretical possibility of indictment of the public official is no barrier to *mandamus.* See *Jones Co. v. Guttenberg, supra; In re The Trenton Water Power Co., supra.* In *Lay v. Hoboken, supra,* the former Supreme Court entertained an application for a writ of *mandamus* commanding the members of the common council of Hoboken to require, by order, resolution or otherwise, that the local taverns be open to full view from the public streets at certain times as required by statute; in response to the contention that the remedy should be by indictment rather than *mandamus,* the court said:

"But the answer is that indictment would not furnish a complete remedy, for, while it might be the means of punishing the delinquent members, it would leave the public duty still unperformed. To justify refusal of the writ on this ground the other remedy must be specific and adequate. *Jones Company v. Guttenberg, supra; State v. Holliday, supra;* 13 *Encycl. Pl. & Pr.* 498."

Other jurisdictions have recognized the wholesome rule that in appropriate situations *mandamus* will lie to compel municipal officials to enforce ordinances, zoning and others, provided the plaintiff's right and the defendant's duty are clear and other adequate relief is unavailable. See *Goodell v. Woodbury,* 71 *N. H.* 378, 52 *A.* 855 (*Sup. Ct.* 1902); *Whittemore v. Town Clerk of Falmouth,* 299 *Mass.* 64, 12 *N. E. 2d* 187 (*Sup. Ct.* 1937); *Beem v. Davis,* 31 *Idaho* 730, 175 *Pac.* 959 (*Sup. Ct.* 1918). *Cf.* 8 *McQuillin, Municipal Corporations* (3rd ed. 1950), *pp.* 577, 648; *Security Co-Operative Bank v. Inspector of Buildings,* 298 *Mass.* 5, 9 *N. E. 2d* 569 (*Sup. Ct.* 1937); *Slate v. Francis,* 95 *Mo.* 44, 8 *S. W.* 1 (*Sup. Ct.* 1888). We consider the rule to be fully applicable in our State; indeed, any more limited concept would fail to meet the needs of our times, would disable our courts from doing complete justice though the particular circumstances be ever so compelling, and would seriously reflect on our advanced judicial administration.

*Cf. Lay v. Hoboken, supra; State v. Londrigan, supra.* The decision of the Appellate Division in *Lanni v. City of Bayonne, supra,* relied upon by the defendants, is not to the contrary. There the plaintiff Lanni did not seek to compel the enforcement of a zoning ordinance but sought to recover from the city, the fine which had been paid by the violator upon his conviction; the court rightly held that there could be no such private recovery in the absence of express statutory provision therefor.

Applying the principles hereinbefore set forth, we find that the trial court should not have dismissed the plaintiff's claim seeking enforcement of the ordinance. Upon his showing there was a clear violation of the zoning ordinance which specially affected him adversely and which had, without any appropriate action resulting, been duly and sufficiently brought to the attention of the supervising official charged with the public duty of executing the ordinance. *R. S.* 40:82–4. It may very well be that at the close of the entire case the trial court, upon proper application of the principles governing the extraordinary remedy of *mandamus* in proceedings in lieu of prerogative writs, will deny the relief sought against the defendant municipal officials; in any event, that would seem to be the course indicated if the plaintiff obtains wholly adequate injunctive relief against the private defendants. But, be that as it may, the showing at the end of his case was sufficient to withstand the motion to dismiss grounded on the alleged absolute unavailability of any proceeding in lieu of prerogative writ to compel enforcement of the ordinance.

## IV.

The trial court expressed the view that the plaintiff's joinder of his claims for (1) injunction and (2) relief in lieu of *mandamus,* was improper and beyond the contemplation of the Judicial Article of the *Constitution of* 1947 and its implementing court rules. We take a wholly different view. Uppermost in the minds of the constitutional dele-

gates was the desire to end costly piecemeal litigation and eliminate procedural devices which frustrate just and simple determination on the merits. *Tumarkin v. Friedman*, 17 *N. J. Super.* 20 (*App. Div.* 1951), certif. denied 9 *N. J.* 287 (1952). Thus they provided generally for the expeditious adjudication of all matters in controversy between parties at one time and place (*Const.* 1947, *Art. VI, Sec. III, par.* 4; *Ritepoint Co. v. Felt*, 6 *N. J. Super.* 219, 222 (*App. Div.* 1950)), and the court rules contain liberal provisions towards the same goal. *Rule* 3:8-1 permits a pleading to seek relief "in the alternative or of several different types." *Rule* 3:18 permits joinder of independent or alternate claims, legal, equitable or both, in an action by a plaintiff against a single defendant (*Galler v. Slurzberg*, 22 *N. J. Super.* 477, 483 (*App. Div.* 1952)); and *Rule* 3:20 permits the joinder of claims against several defendants, jointly, severally, in the alternative, or otherwise, if they arise out of the same occurrences and involve any common question of law or fact. Nowhere in the rules is there any basis for the suggestion that there is to be excluded from within their orbit the joinder of an equitable claim for injunction with a claim in lieu of prerogative writ. It seems clear to us that the joinder of such claims, in appropriate circumstances such as those presented in the instant matter, is well within the farsighted provisions of the rules and will serve the ends of sound judicial administration by curbing the inconvenience, delay and expense incident to independent trials. See 3 *Moore's Federal Practice* (*2nd ed.* 1948), *p.* 2703. *Cf.* the following comment by Dean Harris in the second annual *Survey of the Law of New Jersey*, 5 *Rutgers L. Rev.* 76, 92 (1950):

"An unprecedented joinder of actions made possible under the new practice occurred in *Hendlin et al. v. Fairmount Construction Company et al.*, 8 *N. J. Super.* 310, 72 *A.* 2d 541 (*Ch. Div.* 1950).

Equitable causes, *mandamus*, review in lieu of *certiorari* and a prayer for declaratory judgment all were present, and because of the efficacy of the new court procedure all matters were disposed at the same time and in the same decision."

## V.

The private defendants .contend that the certificate of occupancy issued under date of May 7, 1951 authorized the use of lot six for parking purposes and became irrevocable in the absence of any administrative appeal to the board of adjustment under *R. S.* 40:55–42. The terms of the certificate are properly confined to authorization of the occupancy of the building and have no relation to the use of lot six; if the certificate had authorized the use of lot six for parking purposes, contrary to the ordinance, it would not have been irrevocable but, on the contrary, would have been utterly void and subject to collateral attack by the plaintiff and the municipal officials. See *Giordano v. Dumont,* 137 *N. J. L.* 740 (*E. & A.* 1948); *Adler v. Dep't of Parks, Irvington,* 20 *N. J. Super.* 240 (*App. Div.* 1952); *Frizen v. Poppy, supra.* The ordinary requirement that administrative remedies be exhausted would clearly have no applicability (*Ward v. Keenan, supra; Waldor v. Untermann,* 10 *N. J. Super.* 188 (*App. Div.* 1950); *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952)); the plaintiff was never made a party to the administrative proceeding, apparently had no notice of the certificate's issuance or its terms, and could justly assume that no use in violation of the terms of the ordinance would be authorized in the absence of application for variance upon due notice to him and the other neighboring residents. See *R. S.* 40:55–39; 40:55–44.

## VI.

 Finally, the contention is advanced that the plaintiff was in laches and should therefore be barred from relief. See *Beronio v. Pension Commission of Hoboken, supra.* We consider that upon his showing the plaintiff may not be charged with undue delay or inaction. His attorney's communications before there was any significant construction sufficiently advised the owner, Teaneck Tryon Company, and

the municipal manager, of the plaintiff's interest and his position that use of the lot within the residence zone for parking purposes in conjunction with the building would violate the zoning ordinance; the subsequent construction was at the owner's peril. Before the building was occupied the plaintiff's attorney again wrote to the municipal manager and as soon as the actual use of the parking lot began to harm him legal action was undertaken. What greater alertness in the protection of his rights might reasonably have been expected of him? Legal action at best involves expense and he is hardly to be criticized for withholding it until there was no alternative. If, as his showing indicates, there was a clear violation of the zoning ordinance, his proceeding to eliminate the unlawful use serves not only his private interests but those of the entire community as well and, under such circumstances, the equitable doctrine of laches should be hesitatingly invoked. See *Stokes v. Jenkins, supra.*

The judgment entered in the Law Division is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.