**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3735-17T1

ZUDHI KARAGJOZI and
LYSBETH KARAGJOZI, JOHN
RYAN and KAREN RYAN, and
DOUGLAS BROWN and
KATHY BROWN,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

DAMON RISUCCI and MRS.
RISUCCI, DENNIS PERAS,
BOROUGH OF RUMSON and
DAVID MARKS,

      Defendants-Respondents/
      Cross-Appellants.

_____

Argued March 11, 2019 – Decided April 12, 2019

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2127-15.

Fred S. Dubowsky argued the cause for appellants/ cross-respondents.

Lawrence H. Shapiro argued the cause for respondents/ cross-appellants Damon Risucci and Tracy Risucci (Ansell Grimm & Aaron, PC, attorneys; Lawrence H. Shapiro, of counsel; Rahool Patel, on the briefs).

PER CURIAM

Plaintiffs Zudhi Karagjozi, Lysbeth Karagjozi, John Ryan, Karen Ryan, Douglas Brown, and Kathy Brown (collectively "plaintiffs") appeal the trial court's January 31, 2018 order granting summary judgment to defendants Damon and Mrs. Risucci (collectively "defendants") on plaintiffs' claims for nuisance and seeking a writ of mandamus. In the underlying lawsuit, plaintiffs alleged that defendants violated several municipal zoning ordinances when they constructed their home. Relatedly, plaintiffs asserted that officials of the Borough of Rumson ("the Borough") failed to require defendants to seek a variance to the extent that the improvements deviated from the applicable ordinances. Finally, plaintiffs asserted that defendants' construction unreasonably interfered with the use and enjoyment of their property because the construction put all three of their houses at risk of damage from potential flooding occurrences.

Defendants cross-appeal the trial court's denial of their motion for attorney's fees and costs pursuant to Rule 1:4-8. Having reviewed the record,

2

and in light of the applicable law, we affirm both the trial court's grant of summary judgment and the denial of defendants' motion for attorney's fees and costs.

We recite the relevant facts and procedural history from the record. On November 9, 2007, defendants purchased real property located in Rumson, New Jersey (the "Property"). Plaintiffs, the Brown, Ryan, and Karagjozis families, own properties that are located within two hundred feet of the Property.

In October 2011, defendants retained the services of Andrew R. Stockton ("Stockton"), a professional engineer and land surveyor, to assist them in applying for a permit to demolish the house that existed on the Property and to construct a new home. Plaintiffs, with Stockton's help, submitted the application to the Borough's Zoning Officer, Frederick Andre ("Zoning Officer"). Thereafter, the application was reviewed by the Borough Engineer, David Marks of T&M Associates ("Borough Engineer"), and the Freehold Soil Conservation District ("FSCD").

On December 28, 2011, the FSCD granted certification of defendants' soil erosion and sediment control plans with certain conditions. Based on comments from the Borough Engineer, Stockton revised the plans and resubmitted them on

February 8, 2012. On March 7, 2012, the Borough issued a Certificate of Approval for the demolition of the previously existing house.

By correspondence dated March 7, 2012, the Borough Engineer reviewed the resubmitted plot plan, including a Stormwater Management report submitted by Stockton dated February 6, 2012, and found that the revised plans addressed his previous comments and conditionally approved the grading plan. In granting that approval, the Borough Engineer found: "[T]he proposed work will not have a significant impact on adjacent properties or surrounding municipal infrastructure. No opinion is expressed regarding the correctness, suitability or practicality of the plan for development of the property."

On May 4, 2012, the Zoning Officer issued a zoning permit for the construction of the defendants' new house. He did not indicate that any of defendants' plans lacked conformity to the zoning requirements.

Construction of the new home, including grading for the pool, patio, and cabana, began on or about May 16, 2012. Because the Property sloped toward the lagoon and bulkhead, in order to facilitate construction of the pool, the plans called for a portion of the rear yard area to be levelled and for retaining walls to be installed around the graded area.

The Property is located along a man-made lagoon and, as such, an application for a permit needed to be submitted to the New Jersey Department of Environmental Protection ("DEP"), pursuant to the Coastal Area Facilities Review Act and accompanying regulations ("CAFRA"). On September 4, 2012, the DEP advised that it did not require a waterfront development permit for the construction of the new house; however, it did require a CAFRA permit for the portion of the work at the Property that included reconstruction of the existing pier and bulkhead.

On October 1, 2012, defendants submitted a CAFRA application. Pursuant to CAFRA, notice of the application was given to all record property owners within 200 feet of the Property, including plaintiffs. On October 19, 2012, the DEP granted plaintiffs a waterfront development permit for the reconstruction of the existing fixed pier, two mooring piles, and bulkhead. In addition, on January 8, 2013, the DEP issued a CAFRA permit for the house, pool, and certain other improvements on the Property.

Beginning in 2013, plaintiffs complained to the Borough about various conditions of the ongoing construction at the Property, including concerns about the grading in the rear yard. As a result of plaintiffs' complaints, the Borough halted construction at least three times to conduct further inspections. On each

A-3735-17T1

occasion, the Borough found no issues of concern or deviations from the approved plans, and therefore allowed work to continue. On August 22, 2013, the Zoning Officer issued defendants a zoning permit for the construction of their pool.

On May 28, 2014, the FSCD issued a Report of Compliance. On June 2, 2014, the Borough issued defendants a Temporary Certificate of Occupancy ("TCO") with minor open issues including completing the driveway and confirming the capacity of the installed drywells. The TCO included a response from Michele Kropilak, the Regional Supervisor of the Coastal & Land Use Compliance & Enforcement Bureau of the DEP, responding to plaintiffs' complaints. In her response, Ms. Kropilak stated that the improvements did not violate flood hazard regulations and that the bulkhead was properly constructed.

In a June 3, 2014 letter, the Borough Engineer opined that

> [t]he drainage patterns of the as-built condition are consistent with the intent of the approved grading plan. However, several minor discrepancies exist between the proposed and as-built conditions and should be noted. The finished floor elevations, as well as the rear improvements such as the patio area and in-ground pool elevations are approximately 1.3 feet higher than originally proposed. Additionally, two seepage pits have been installed, one to the north of the patio area and on to the south, as opposed to the originally proposed single seepage pit to the southeast of the dwelling. Lastly, it should be noted that the proposed

> driveway improvements have not yet been completed. Continued compliance with . . . the Borough's Stormwater Management Ordinance is required.
>
> It has been brought to our attention that neighboring residents are concerned about possible flooding onto their adjoining properties. As previously indicated, there should be no negative impacts from stormwater runoff as the drainage patterns are consistent with the approved grading plan. Although portions of the site have been raised from existing conditions, NJDEP regulations do not govern infill within tidally influenced water bodies since the fill does not impact tidal flood elevations.

On August 20, 2014, plaintiffs' attorney sent defendants a letter seeking to "meet and discuss the problem" with defendants' construction. The letter was followed by correspondence from the plaintiffs' attorney to the Borough Engineer and construction officials claiming that a zoning variance was required for the house.

On November 4, 2014, the TCO was extended for sixty days because defendants were still awaiting the delivery and installation of basement railings. Nonetheless, the Borough recognized that the open grading issues from the initial TCO were resolved.

On November 10, 2014, plaintiffs' counsel again wrote to the Borough asserting that permits were issued without proper zoning approval. On December 1, 2014, Stockton, defendants' engineer and land surveyor, confirmed

7

that the total as-built lot coverage for the Property was less than that approved on the plot plan.  Stockton also noted that defendants installed two seepage pits instead of the one approved on the plan, resulting in additional storage volume.  Notably, Stockton confirmed that "the two installed seepage pits provide more storage volume than the original design and are therefore sufficient for the project."

On December 18, 2014, the FSCD issued a Final Report of Compliance.  As a result of continuing complaints from plaintiffs, on April 23, 2015, the Borough Engineer, after conducting an on-site visit, again confirmed the sufficiency of the as-built grading plan and stated that he had "no objection to the issuance of a Certificate of Occupancy [("CO")]."  The Borough Engineer reiterated the statements made in his June 3 letter, and stated that "the deficiencies listed in my June 3, 2014 letter have been sufficiently addressed."  The Borough Engineer again stated, "It has been brought to our attention that neighboring residents are concerned about possible flooding onto their adjoining properties.  As previously indicated, there should be no negative impacts from stormwater runoff as the drainage patterns are consistent with the approved grading plan."  On April 23, 2015 the Borough issued a CO.

On June 8, 2015, plaintiffs filed the instant litigation, seeking damages for nuisance and seeking a writ of mandamus.

In the course of discovery, plaintiffs failed to identify any actual damages suffered as a result of the alleged nuisance. Mrs. Brown conceded in her deposition testimony that defendants' property has not "unreasonably interfered with [her] use and enjoyment of [her] property[,]" and that there is nothing that she could previously do on her property prior to the construction of defendants' home that she cannot now do after the construction. Mrs. Brown stated that, prior to defendants' construction, her property experienced flooding from the canal during storms, high tide, and full moons. The flooding has continued since defendants' constructions, but it has not "been any different to what [the Browns] experienced in the past." Mr. Brown expressed concern about potential additional flooding due to the height of defendants' retaining wall. The Browns admit that no such increased flooding has actually occurred, but they fear it may happen in the future if a superstorm such as Sandy happens.

Mr. and Mrs. Ryan expressed concerns with "the proximity of [respondents'] wall next to their fence." According to Mrs. Ryan, "[a]nyone can walk down the property line across their wall and have access to our yard. We have a pool. Their wall is higher than our pool fence." Mrs. Ryan conceded,

9

however, that no one has utilized defendants' retaining wall to gain access into the Ryans' backyard since the wall was erected over four years ago.

The Karagjozis testified that they are concerned about the possibility of their "house getting damage by water coming from [defendants'] yard[,]" which they conceded has not happened to date. The Karagjozis expressed that the use and enjoyment of her property has been negatively impacted because they continually fear damage to their property as a result of potential future storms.

Plaintiffs and defendants retained experts who submitted reports. Plaintiffs' expert, Frank J. Baer, Jr., P.E., P.P., prepared an "Existing Conditions Plan," which summarized several ways in which the as-built construction deviated from the approved plans and municipal ordinances, including that defendants' retaining wall, patio, and steps were built within the twenty-five foot setback requirement. As to damages, plaintiffs' expert opined "that beyond the failure to comply with municipal ordinance requirements, such encroachment into this waterway setback is similar in nature to encroachment by a structure into an [sic] mapped floodway similar to a stream encroachment that will impact water/flood levels during the 100 year storm due to displacement of volume by the encroachment of the wall, steps, etc. As a result, there is a negative impact

on adjacent properties in that there will be an increase in water levels resulting in greater areas that are displaced[.]"

Defendants' expert's report disputed that the retaining wall was within the setback requirements. Defendants' expert opined that defendants' property has "no impact on drainage flow paths and does not cause stormwater runoff impacts to neighboring properties any differently than the pre-existing condition."

On January 19, 2018, the trial court granted defendants' motion for summary judgment and dismissed the entire complaint against them without prejudice. The trial court found that defendants were entitled to summary judgment because plaintiffs had not established that they suffered damages. The trial court made no specific findings regarding plaintiffs' claims that defendants' property violated the Municipal Land Use Law ("MLUL"), N.J.S.A. 40:55D-1 to -163, or municipal ordinances. The trial court concluded that plaintiffs' MLUL claims were not properly before the court as plaintiffs failed to formally intervene in the matter before the zoning board or file an action in lieu of prerogative writs to appeal the board's determination that variances were not required.

On March 2, 2018, the court heard oral argument on defendants' motion for attorney's fees and costs. In an oral opinion, the court denied the motion.

Defendants argued that their motion should be granted because after discovery took place, "it became crystal clear that . . . there was just absolutely no basis for this suit." The trial court denied the motion, finding that

> [a]lthough I did grant summary judgment and dismiss the claim, I do think that there was a basis for the claims. I don't think they rise to the level of being frivolous as set forth in 1:4-8 and the case law interpreting same. I do think that there may have been merits to these claims, however, counsel chose the wrong forum by filing here as opposed to availing themselves relief available under the municipal land use law.

In light of the prevailing authority, the trial court concluded that the complaint did not "rise[] to the level of being frivolous. There may be a viable claim at a later date, it's just not today, as well as I think counsel adjudicated this matter in an incorrect forum as opposed to where I think it should have been addressed." This appeal ensued.

A. Plaintiffs' failure to exhaust administrative remedies

On appeal, plaintiffs first argue that they did not need to exhaust administrative remedies under Rule 4:69-5, claiming that it would have been futile to seek the sought-after relief before the zoning board. We disagree.

Actions in lieu of prerogative writs "shall not be maintainable as long as there is available a right of review before an administrative agency which has

not been exhausted . . . [e]xcept where it is manifest that the interest of justice requires otherwise[.]" R. 4:69-5. "The exhaustion of administrative remedies is not an absolute prerequisite to seeking appellate review, however. Exceptions are made when the administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision." N.J. Civ. Serv. Ass'n v. State, 88 N.J. 605, 613 (1982) (citing Garrow v. Elizabeth Gen. Hosp. and Dispensary, 79 N.J. 549, 561 (1979)).

Our Supreme Court has held that a party need not exhaust administrative remedies when the zoning board is unable to provide the relief sought. See Riggs v. Long Beach Twp., 101 N.J. 515, 525-26 (1986). In Riggs, the plaintiffs owned property that was acquired by eminent domain through a public referendum. Id. at 518-19. The defendant township later passed an ordinance that re-zoned plaintiffs' property to a lower density zone. Id. at 519. The plaintiffs brought suit in the Superior Court alleging that the ordinance was unconstitutional and aimed at lowering the market value of their property. Id. at 520.

We concluded that plaintiffs were barred from bringing their claims to the Superior Court without first exhausting their administrative remedies, but the Supreme Court reversed, noting:

> A local planning board's consideration of an application for a variance in these circumstances would have no bearing on the issues raised by the plaintiffs' claim that the ordinance is unconstitutional. The board decision would not answer the question whether the ordinance impermissibly affects only the plaintiffs' property, and it would not have any bearing on whether the ordinance was arbitrary, unreasonable, or unconstitutional.
>
> [Id. at 525-56.]

The Court concluded that plaintiffs' claims involved legal issues that needed to be determined by a court. Id. at 526. See also Borough of Matawan v. Monmouth Cty. Bd. of Tax'n, 51 N.J. 291, 297 (1968) (finding that exhaustion of administrative remedies would be an "idle gesture" where an "administrative body would be asked to declare illegal its own actions under the statute").

In this case, in contrast, plaintiffs do not challenge the validity or constitutionality of the zoning ordinances, which would be within the exclusive purview of the Superior Court. See Riggs, 101 N.J. at 520. To the contrary, plaintiffs rely on the validity of the ordinances in support of their claim that the zoning board should have required defendants to seek variances based on the minor deviations from those ordinances.

14

Moreover, plaintiffs have not established that bringing their claims to the zoning board would have been "futile." See N.J. Civ. Serv. Ass'n, 88 N.J. at 613. Unlike in Riggs, where the Supreme Court held that exhausting administrative remedies would have been futile because the board could not afford the relief sought, the relief sought here could have been granted by the zoning board. See 101 N.J. at 525-26. As plaintiffs contend that defendants' home was constructed in violation of local zoning ordinances, they could have brought their concerns to the local zoning board, which has the authority to enforce local zoning ordinances. See N.J.S.A. 40:55D-70. Thus, the trial court correctly concluded that plaintiffs were required to exhaust their administrative remedies before bringing their claim to the trial court. See R. 4:69-5.

B. Writ of Mandamus

Plaintiffs next argue that they did not need to exhaust administrative remedies because they are seeking a writ of mandamus due to the inactivity and indifference of the Borough officials. We disagree.

In an action in lieu of mandamus, a party seeks equitable relief from the trial court "to command the performance of a public duty which ought to be performed." Garrou v. Teaneck Tryon Co., 11 N.J. 294, 302 (1953); Mullen v. Ippolito Corp., 428 N.J. Super. 85, 102 (App. Div. 2012). We review a trial

court's decision whether to grant a writ of mandamus for abuse of discretion. Ibid. "[I]n appropriate situations mandamus will lie to compel municipal officials to enforce ordinances, zoning and others, provided the plaintiff's right and the defendant's duty are clear and other adequate relief is unavailable." Garrou, 11 N.J. at 303. A party seeking a writ of mandamus must establish

> (1) a showing that there has been a clear violation of a zoning ordinance that has especially affected the plaintiff; (2) a failure of appropriate action despite the matter having been duly and sufficiently brought to the attention of the supervising official charged with the public duty of executing the ordinance; and (3) the unavailability of other adequate and realistic forms of relief.
>
> [Mullen, 428 N.J. Super. at 103 (citing Garrou, 11 N.J. at 302-04).]

In Mullen, the plaintiffs lived next door to an existing nonconforming motel. Id. at 87-88. Over a period of thirteen years, the plaintiffs complained to municipal officers that the defendant motel owners were expanding their motel in violation of municipal ordinances and housing codes. Id. at 88. The plaintiffs then brought suit against the motel owners and the municipality in the Superior Court, contending that the municipal officers ignored their complaints. Ibid. Specifically, the plaintiffs alleged that the motel owners unlawfully expanded the snack bar, unlawfully expanded the boardwalk near the motel, and

did not have the number of parking spaces required by local ordinance. Id. at 91-94, 95-96. Regarding the snack bar and the boardwalk, evidence in the record established that the zoning officer stated that no expansion took place and any alterations did not require zoning board approval. Id. at 93. The evidence further suggested that municipal officers did not take any action regarding plaintiffs' complaint about the violation of the parking space ordinance. Id. at 96. The trial court granted summary judgment to the municipal defendants because plaintiffs failed to exhaust their administrative remedies under Rule 4:69-5. Id. at 88. In reversing the grant of summary judgment and remanding the matter for further proceedings, we noted:

> Plaintiffs presented concrete evidence establishing a pattern of indifference by the municipal officials charged with the enforcement of the local zoning . . . ordinances. The evidence, viewed in the light most favorable to plaintiffs, show plaintiffs repeatedly complained to these officials that the [motel] was expanding and intensifying its business activities in defiance of municipal zoning ordinances. Plaintiffs' actions in this respect are similar to the letters written by the plaintiff's attorney in Garrou. Like Garrou, plaintiffs were either ignored or told, in a summary and dismissive fashion, that enforcement action against the [motel] was unwarranted.
>
> [Id. at 103-04.]

As an initial matter, unlike the facts in <u>Garrou</u> and <u>Mullen</u>, plaintiffs' complaints to the Borough were not summarily ignored. Rather, in response to the residents' concerns, the Borough halted construction on defendants' property at least three times to conduct further inspections, each time finding that there should be no negative impacts from stormwater runoff.

Regardless, plaintiffs are not able to maintain the current action against defendants as an action in lieu of prerogative writ for mandamus because the writ is used to compel public officials to perform a duty, such as enforcing a zoning ordinance. <u>See</u> <u>Garrou</u>, 11 N.J. at 302. Unlike in <u>Mullen</u> and <u>Garrou</u>, plaintiffs bring this appeal against private property owners, who have no authority to enforce zoning ordinances. <u>See</u> 428 N.J. Super. at 88.

Thus, we conclude that the trial court correctly dismissed plaintiffs' claims against defendants to the extent they were seeking a writ of mandamus, as those claims clearly are barred for failure to state a claim against these defendants. <u>R.</u> 4:6-2.

### C. Nuisance

Plaintiffs next argue that the trial court incorrectly granted summary judgment to defendants dismissing their claims for nuisance. Plaintiffs contend that the trial court incorrectly determined that they are not suffering any present

harm and contend that to the extent they allege future harm, the harm is "inevitable." We disagree with both contentions, and conclude that the trial court correctly granted summary judgment to defendants.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (citing Templo Fuente, 224 N.J. at 199). In reviewing a grant of summary judgment, appellate courts consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill,

142 N.J. at 536 (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251-52 (1986)).

"A cause of action for private nuisance derives from the defendant's 'unreasonable interference with the use and enjoyment' of the plaintiff's property." <u>Ross v. Lowitz</u>, 222 N.J. 494, 505 (2015) (quoting <u>Sans v. Ramsey Golf & Country Club, Inc.</u>, 29 N.J. 438, 448 (1959)); <u>Ruiz ex rel. Ruiz v. Kaprelian</u>, 322 N.J. Super. 460, 472 (App. Div. 1999) ("The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land."). New Jersey courts analyze nuisance claims in accordance with the Restatement (Second) of Torts, section 822 in particular. <u>Ross</u>, 222 N.J. at 505 (quoting <u>Smith v. Jersey Cent. Power & Light Co.</u>, 421 N.J. Super. 374, 389 (App. Div. 2011)); <u>Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes</u>, 90 N.J. 582, 592 (1982).

Restatement Section 822 identifies the elements of a cause of action for private nuisance:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

[Ross, 222 N.J. at 505-06 (citing Restatement (Second) of Torts § 822 (1979).]

We conclude that the trial court properly granted summary judgment to defendants on plaintiffs' nuisance claims based on its finding that plaintiffs have not established that they suffered any damages.  We note that plaintiffs concede that defendants' property has to date not impacted the use and enjoyment of their property; rather they merely allege fears of future interference that may or may not ever come to pass.  See ibid.  Thus, plaintiffs cannot establish that they suffered "an invasion of [their] interest in the private use and enjoyment of [their] land."  See ibid.  See also Kaprelian, 322 N.J. Super. at 472.

Plaintiffs' expert report similarly fails to establish that plaintiffs have sustained any present harm resulting from the construction.  The bulk of Mr. Baer's opinion consists largely of a summary of the ways in which the as-built construction deviates from the approved plans and from the ordinance.  Mr. Baer's opinion regarding damages, however, is premised on the same speculative eventuality of what would occur in the future in the event of a 100-year storm.  Specifically, Baer opines that "beyond the failure to comply with municipal

ordinance requirements, such encroachment into this waterway setback is similar in nature to encroachment by a structure into an (sic) mapped floodway similar to a stream encroachment that will impact water/flood levels <u>during the 100 year storm</u> due to displacement of volume by the encroachment of the wall, steps, etc. As a result, there is a negative impact on adjacent properties in that there will be an increase in water levels resulting in greater areas that are displaced[.]" However, in the four-plus years since the construction was completed, major storms and weather events have transpired, none of which triggered the predicted "increase in water levels" beyond what the neighborhood experienced before the construction.

D. Injunctive Relief

At oral argument, plaintiffs' counsel, while conceding that plaintiffs have not sustained any actual damages as a result of the construction, averred that plaintiffs should not be required to await a remedy until they are "standing knee-deep in water," if and when a superstorm such as Sandy occurs in the future. To the extent they are seeking injunctive relief, plaintiff have failed to show any immediate or irreparable harm that would entitle them to such relief. See Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982) (setting forth factors that warrant injunctive relief). Defendants' home has been fully constructed since

22

2015. In the intervening four years, none of plaintiffs' feared harms have come to pass and there is no competent evidence to suggest any causal relation between any potential future damage and defendants' minor deviations from the ordinances. For those reasons alone, we conclude that injunctive relief is not warranted.

E. Defendant's Counterclaim for Attorney's Fees and Costs

Defendants argue in their cross-appeal that the trial court erred in denying their counterclaim for attorney's fees and costs. Appellate courts review a trial court's decision whether to award attorneys' fees and costs for an abuse of discretion. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the trial court's decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Id. at 498 (quoting Mason v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

Under New Jersey's frivolous litigation statute, the court may award a prevailing party reasonable litigation costs and reasonable attorneys' fees "if the judge finds at any time during the proceedings or upon judgment that a

complaint . . . of the nonprevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1). A complaint is frivolous where:

> (1) The complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
>
> (2) The nonprevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b).]

"[F]alse allegations of fact [do] not justify the award of counsel fees, unless they are made in bad faith, 'for the purpose of harassment, delay or malicious injury.'" McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561 (1993) (quoting N.J.S.A. 2A:15-59.1(b)(1)). "When the plaintiff's conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she should not be found to have acted in bad faith." Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999) (citing McKeown-Brand, 132 N.J. at 563).

In light of the competent evidence in the record and the prevailing principles of law, we conclude that the trial court did not abuse its discretion by denying defendants' claim for attorney's fees and costs. The trial court found

24

that there may have been some factual basis to assert that the deviations from the ordinance required a variance, but that plaintiffs chose the wrong forum to pursue those claims. The trial court further found that a viable claim might arise at a later date, should any of the parade of horribles feared by plaintiffs actually materialize. Plaintiffs were in the correct forum for the mandamus claim. See Garrou, 11 N.J. at 302. However, the mandamus claim is not cognizable against a private individual. See id. at 303. In addition, plaintiffs attempted in apparent good faith to support their legal theories with an expert report of a licensed professional. Under the circumstances, the trial did not err in its perception that plaintiffs' conduct demonstrated "an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim" and therefore, could not be found to have acted in bad faith. Belfer, 322 N.J. Super. at 144-45.

To the extent any arguments are not addressed herein, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25

A-3735-17T1