84 N.J. Super. 159 (1964)
201 A.2d 377
WILDLIFE PRESERVES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PAUL D. POOLE, JR., BUILDING INSPECTOR OF THE TOWNSHIP OF EAST HANOVER, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1964.
Decided June 5, 1964.
*160 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Charles T. Hock argued the cause for appellants (Messrs. Mills, Doyle & Muir, attorneys).
Mr. Ralph N. Solodar argued the cause for respondents Paul D. Poole, Jr., Building Inspector, Joseph Lurker and Daniel Filipow, Committeemen, and Michael Deskovick, Mayor, of the Township of East Hanover (Mr. Harry Amsterdam, attorney).
Mr. Clifford W. Starrett argued the cause for respondent Michael Deskovick (Messrs. Schenck, Price, Smith & King, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff Wildlife Preserves, Inc. instituted an action in lieu of prerogative writs in the Law Division of the Superior Court (1) to compel defendants building inspector, mayor and township committee of the Township of East Hanover to enforce the zoning laws of the municipality, and (2) to enjoin defendant Michael Deskovick from using his land as a "dump" in violation of a local zoning ordinance. The trial culminated in judgment for defendants, and plaintiff appeals.
It is here contended that the trial court erred in finding that plaintiff failed to sustain special damages sufficient to give it standing to bring the pending action, and that defendant Deskovick was not in violation of the existing zoning ordinance.
The first ground assigned for reversal requires only brief comment. The general rule is that a property owner *161 may obtain an equitable restraint against violation of a zoning ordinance if "special damage over and above the public injury" has been sustained. Mayor, &c., of Alpine Borough v. Brewster, 7 N.J. 42, 52 (1951); Garrou v. Teaneck Tryon Co., 11 N.J. 294, 300 (1953). Here the complaint was dismissed but only after plenary hearing on the merits. While the trial court regarded as "scant" the proofs proffered as to special damages, it found as a matter of fact that Deskovick had not violated the zoning ordinance as alleged in the pleadings. Hence, the trial court recognized plaintiff's right to sue but found that the proofs were inadequate to sustain the claims asserted.
Resolution of the remaining issue impels an analysis of the factual record. In 1955 Deskovick, who is engaged in the construction business, acquired ownership of approximately nine acres of swampland situate in a district of the township which is zoned residential. The permitted uses in that zone include one-family dwellings, farms, nurseries and green-houses, public parks, playgrounds, and "customary accessory buildings and uses, provided such are incidental to that of the principal building and use." The minimum lot area for residential buildings is 80,000 square feet, with a frontage of not less than 250 feet.
The subject lands consist of eight lots (referred to in the owner's deed and noted on the township tax map) which have a total frontage of approximately 900 to 1,000 feet along an abandoned roadway known as Clinger Road. The road deadends at the Whippany River, which forms the northwesterly boundary of the property.
Deskovick was the only witness for the defense. He described the swampland as marshy, with humus and peat moss at varying depths of two to ten feet, below which is a "crust of clay and then you run into sand and gravel." A substantial portion is under water, particularly when the river overflows after a heavy rain. The inundation has been as much as 42 inches "above the top of the humus." In 1956 he started to landfill the lowlands with "dirt, stumps, trees, rock, concrete, *162 brick, plaster, anything related to the building trade." Residents in the community were allowed, without charge, to deposit inorganic materials on the property  but only on Saturdays, and they were prohibited from depositing undesirable waste such as garbage. On that day of the week a man was stationed on the premises to prevent improper dumping.
At the request of the State Board of Health, the owner defendant erected a locked access gate at the end of Clinger Road, approximately 200 feet from the river; keys were furnished to the police, fire department and board of health. Deskovick further testified that a coverage fill of one or two feet of earth was added to the basic deposits and the property was then leveled with a bulldozer to a surface grade of approximately five feet above the bank of the river. At the time of trial about an acre of land had been filled in and graded. Deskovick stated there would be "no problem," with the use of proper concrete pilings, to build "any kind of structure" on the completed terrain and, under redirect examination, he made reference to ranch type homes in the township which had been constructed on similar bog land.
When interrogated by plaintiff's counsel, Deskovick admitted that his property was originally purchased as a place to "get rid of my surplus dirt," but he also testified:
"Q. So that you could get approximately four houses on this property. Is that correct?
A. That's right.
Q. Is that what you intended to do?
A. Some day when I get it filled up I intend to use it. I am not going to let it lay there.

* * * * * * * *
Q. It is true, isn't it, that you have no immediate or definite plan at all to use this for residential development?
A. Well, I can't tell. I might get a job tomorrow and I might have a lot of surplus dirt and I can fill it up in a couple of months; that's it."
Wildlife owns in excess of 1,500 acres of fresh water marshland encompassed within an area known as Troy Meadows. A portion of its property is adjacent to lands of Deskovick. *163 Plaintiff's complaint, in essence, is for injunctive relief to prevent Deskovick from using his property, zoned residential, for business purposes. Four witnesses were called to support plaintiff's cause  one of its trustees, a part-time employee, a former field representative, and an employee of the National Audubon Society. Their testimony was directed primarily to the physical conditions of Deskovick's property, the use thereof for dumping purposes, its unsightliness which allegedly was "evaluated" by prospective donors, the frequency of unattended fires, and the detrimental consequenes of defendant's use upon the conservation and preservation of wild life. The witness from the Society, however, admitted that the filled in and covered portion of the disputed lands did not adversely affect plaintiff's preserve except for the possibility of pollution. No evidence of pollution was adduced.
The trial judge expressed the opinion that plaintiff had not "established here that Deskovick has created any unsanitary condition * * * There is nothing of the character of a nuisance." In his summary of findings, he stated:
"I am satisfied from the proofs that Deskovick is not conducting a commercial dump; he is not conducting a business on the nine acres. I find that he is filling in the premises to prepare them for a use permitted under the zoning ordinance."
Thus, the factual controversy was adjudged in favor of Deskovick. Our Supreme Court has stated in Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 423-424 (1961), that "when the result of the contest must turn on the truthfulness of witnesses, the superior advantage of the trial judge in seeing and hearing and appraising the disputants must ordinarily be regarded as the fulcrum on which the issue should be resolved."
It is clear and uncontroverted from the evidence that Deskovick's property, situate in a residential district, has been laid out in building lots and, in the absence of a landfill operation, it would be unusable for any of the permissible uses contemplated by the township zoning ordinance. The very *164 topographical, geological and marginal characteristics of the land render it useless without foundational improvements. The ultimate utility of the property for a purpose consistent with the zoning regulations necessitates preconditioning activities. Neither the source from which an owner obtains offsite waste materials for a lawful land reclamation program nor the immediacy of his intended use for building purposes is of significant importance. The nature of the use does not depend upon mere prospective intentions. See Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 104 (1957). The judicial concern is with the actual use as related to the designed objective, rights and proscriptions within the intendment of the zoning ordinance.
We hold that a reasonable sanitary landfill operation in a residential district does not in and of itself constitute a business use in violation of a zoning ordinance. Cf. Morris County Land, etc. v. Parsippany-Troy Hills Tp., 40 N.J. 539, 550 (1963).
Judgment affirmed.