938 A.2d 158 (2008)
397 N.J. Super. 502
PEOPLE FOR OPEN GOVERNMENT, Ann Graham, Robert T. Duval, Alice Crozier and James D. Vance, Plaintiffs-Appellants
v.
David ROBERTS, in his capacity as Mayor of Hoboken, Ruben Ramos, in his capacity as a member of the Hoboken City Council, the City of Hoboken, Terry LaBruno, in her capacity as a member of the Hoboken City Council, and Peter Cammarano, in his capacity as a member of the Hoboken City Council, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2007.
Decided January 9, 2008.
*159 Renee Steinhagen, argued the cause for appellants (New Jersey Appleseed Public Interest Law Center, attorneys; Ms. Steinhagen, of counsel and on the brief).
Christopher R. Welgos, Florham Park, argued the cause for respondents (Schwartz Simon Edelstein Celso & Kessler, attorneys; Stephen J. Edelstein, of counsel; Mr. Edelstein, Denis G. Murphy and Christopher R. Welgos, on the brief).
Before Judges WEISSBARD, S.L. REISNER and GILROY.
The opinion of the court was delivered by WEISSBARD, J.A.D. (retired and temporarily assigned on recall).
In this appeal we must determine whether four individual plaintiffs, Ann Graham, Robert T. DuVal, Alice Crozier and James D. Vance, and People for Open Government (POG), an organization of which they are members, have standing to challenge what they claim to be a lack of enforcement of an ordinance adopted by the City of Hoboken (the City) designed to curtail the nefarious practice of "pay to play," wherein individuals and companies are awarded municipal contracts as a reward for having made political contributions to municipal officials. The Law Division dismissed plaintiffs' suit against Hoboken Mayor David Roberts, Hoboken City Council members Ruben Ramos, Terry LaBruno and Peter Cammarano, and the City based on its conclusion that plaintiffs lacked standing. We reverse. We conclude that plaintiffs have a sufficient particularized interest in the enforcement of the ordinance, beyond their status as "mere taxpayers," to afford them standing to pursue this lawsuit.

I
On November 2, 2004, the voters of Hoboken approved the City's Public Contracting Reform Ordinance (Ordinance), which had been placed on the ballot via initiative. Among other things, the Ordinance restricts certain political contributors from negotiating or entering into certain *160 contracts with the City. In its critical part, the Ordinance provides as follows:
Prohibition on awarding public contracts to certain contributors.
A. Any other provision of law to the contrary notwithstanding, the municipality or any of its purchasing agents or agencies of those of its independent authorities, as the case may be, shall not enter into an agreement or otherwise contract to procure services, including banking services/relationships, legal or insurance coverage, or any other no-bid consulting services, from any professional business entity, if that entity has solicited or made any contribution of money; or pledge of a contribution, including in-kind contributions, to a campaign committee of any Hoboken candidate or holder of the public office having ultimate responsibility for the award of the contract, or to any Hoboken or Hudson County party committee, or to any political action committee (PAC) that is organized for the primary purpose of promoting or supporting Hoboken municipal candidates or municipal officeholders in excess of the thresholds specified in Subsection D. within two (2) calendar years immediately preceding the date of the contract or agreement.
B. No professional business entity which enters into negotiations for, or agrees to, any contract or agreement with the municipality of any department or agency thereof or of its independent authorities for the rendition of professional, banking or insurance coverage services or any other no-bid consultants shall knowingly solicit or make any contribution of money, or pledge of a contribution, including in-kind contributions, to any Hoboken candidate or holder of the public office having ultimate responsibility for the award of the contract, or to any Hoboken or Hudson County party committee, or to any PAC that is organized for the primary purpose of promoting or supporting Hoboken municipal candidates or municipal officeholders between the time of first communications between that business entity and the City of Hoboken regarding a specific professional services agreement and the later of the termination of negotiations or the completion of the contract of agreement.
. . . .
Penalty.
A. All City of Hoboken professional service agreements shall provide that it shall be a material breach of the terms of the government contract for a professional business entity as defined in Section 20A-6C to violate, or to aid or abet a violation of Section 20A-6 B or D or to knowingly conceal or misrepresent contributions given or received, or to make or solicit contributions through intermediaries for the purpose of concealing or misrepresenting the source of contribution.
B. Any professional business entity as defined in Section 20A-6C who knowingly fails to reveal a contribution made in violation of this Article, or who knowingly makes or solicits contributions through intermediaries for the purpose of concealing or misrepresenting the source of the contribution, shall be disqualified from eligibility for future City contracts for a period of four (4) calendar years from the date of the violation.
In the May 10, 2005 Hoboken municipal election, defendant Roberts was a candidate for Mayor and defendants Ramos, LaBruno, and Cammarano were candidates for City Council. During the campaign they established a joint candidate committee, the "Roberts Team." As of the election, Mayor Roberts and Councilman *161 Ramos were incumbents; Councilwoman LaBruno and Councilman Cammarano were not. In the election, no candidate for Mayor received a majority of the vote, and no candidate for Council Member at Large received a majority of the vote. However, Mayor Roberts qualified for a run-off election for Mayor, and Councilman Ramos, Councilwoman LaBruno and Councilman Cammarano qualified for a run-off election for Council Member at Large. At the run-off election, Roberts, Ramos, LaBruno and Cammarano were elected.
On June 2, 2005, prior to the June 14, 2005 run-off election, POG, Graham, DuVal, Crozier and Vance (collectively, "plaintiffs") filed a verified complaint against Mayor Roberts, Councilman Ramos and the City of Hoboken. The complaint sought to compel Roberts and Ramos to report to the City Council certain campaign contributions received by the Roberts Team, which allegedly violated the Ordinance, and to compel Roberts, Ramos and the City to enforce the Ordinance. Plaintiffs filed an amended complaint on June 10, 2005.
According to the complaint, POG is an unincorporated,[1] non-partisan political committee dedicated to the promotion of open, accountable and transparent municipal government, active participation of Hoboken residents in municipal affairs and curbing the undue influence of campaign contributions on public policy. POG supports public reporting of campaign contributions that violate the Ordinance. Graham is president of POG. Plaintiffs DuVal, Crozier and Vance signed the initiative petition that led to the enactment of the Ordinance and actively solicited others to sign the petition. POG was the plaintiff in a prior court action that successfully forced the City to place the Ordinance on the ballot.
On August 22, 2005, Roberts, Ramos, and the City filed an answer and asserted affirmative defenses. On or about November 7, 2005, plaintiffs amended their complaint to add LaBruno and Cammarano as defendants and to add additional allegations of illegal campaign contributions. The amended complaint also identified additional holders of no-bid contracts, seeking to have defendants report them as having made illegal contributions. On January 3, 2006, defendants filed a motion for summary judgment dismissing the second amended complaint. On February 20, 2006, plaintiffs cross-moved to amend their complaint a second time, adding Ines-Garcia Keim, an unsuccessful candidate for the Hoboken City Council in the 2005 election, as a plaintiff and adding additional defendants.
On April 12, 2006, the court heard argument on the motions and rendered a decision on the record, dismissing plaintiffs' complaint for lack of standing and denying plaintiffs' motion to amend their complaint. On April 13, 2006, the judge entered an order reflecting his decision, along with a statement of reasons attached.
Plaintiffs appeal, arguing that both the individuals and POG have standing to bring this action. We agree.

II
Our standard of review is not seriously in dispute. The issue of standing is a matter of law as to which we exercise de novo review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995); Rowe v. Hoffmann-La Roche, Inc., 383 N.J.Super. 442, 452, 892 A.2d 694 (App.Div.2006). To the extent that standing may implicate questions of fact, on a summary judgment *162 motion plaintiffs' assertions must be accepted as true and plaintiffs, as the non-moving party, are given the benefit of all favorable inferences supporting their claim. Garrison v. Twp. of Middletown, 154 N.J. 282, 284, 712 A.2d 1101 (1998). With those standards in mind, we turn to the merits.

III
The concept of standing refers to a litigant's "`ability or entitlement to maintain an action before the court.'" Triffin v. Somerset Valley Bank, 343 N.J.Super. 73, 80, 777 A.2d 993 (App.Div.2001) (quoting N.J. Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 409, 686 A.2d 1265 (App.Div.), certif. granted, 152 N.J. 13, 702 A.2d 352 (1997), appeal dismissed as moot, 152 N.J. 361, 704 A.2d 1297 (1998)). The "essential purpose" of the standing doctrine in New Jersey is to:
assure that the invocation and exercise of judicial power in a given case are appropriate. Further, the relationship of plaintiffs to the subject matter of the litigation and to other parties must be such to generate confidence in the ability of the judicial process to get to the truth of the matter and in the integrity and soundness of the final adjudication. Also, the standing doctrine serves to fulfill the paramount judicial responsibility of a court to seek just and expeditious determinations on the ultimate merits of deserving controversies.
[N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 69, 411 A.2d 168 (1980).]
The beacon we follow was lit in Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 275 A.2d 433 (1971).[2] At the outset, the Court took note of the fact that "New Jersey cases have historically taken a much more liberal approach on the issue of standing than have the federal cases." Id. at 101, 275 A.2d 433. "Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies." Id. at 107, 275 A.2d 433 (citing U.S. Const., Art. III, § 2; N.J. Const. Art VI, § 1.) Nevertheless, the Court observed that a proper exercise of judicial power precludes rendering "advisory opinions or function[ing] in the abstract." Ibid. (citing N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 240, 69 A.2d 875 (1949)). As a corollary to that principle, our courts will not "entertain proceedings by plaintiffs who are `mere intermeddlers' or are merely interlopers or strangers to the dispute." Ibid. (internal citations omitted); Ridgewood Educ. Ass'n v. Ridgewood Bd. of Educ., 284 N.J.Super. 427, 432, 665 A.2d 776 (App.Div.1995).
In N.J. State Chamber of Commerce, supra, 82 N.J. at 68, 411 A.2d 168, the Court again stressed that our standing rules serve to preclude actions initiated by persons whose relation to the dispute may be described as "total strangers or casual interlopers," a threshold we have described as "fairly low." Triffin, supra, 343 N.J.Super. at 81, 777 A.2d 993 (quoting Reaves v. Egg Harbor Twp., 277 N.J.Super. 360, 366, 649 A.2d 904 (Ch.Div.1994)); see also In re Baby T., 160 N.J. 332, 342, 734 A.2d 304 (1999).
The Court expressed its essential philosophy on the issue as follows:

*163 Without ever becoming enmeshed in the federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits."
[Crescent Park, supra, 58 N.J. at 107-08, 275 A.2d 433 (citations omitted.)]
Not being bound by the federal case or controversy restriction, our Court "remains free to fashion its own law of standing consistent with notions of substantial justice and sound judicial administration." Salorio v. Glaser, 82 N.J. 482, 491, 414 A.2d 943 (1980).
Thus, the Court has "consistently held that in cases of great public interest, any `slight additional private interest' will be sufficient to afford standing." Ibid. (citations omitted). "[A] plaintiff's particular interest in the litigation in certain circumstances need not be the sole determinant. That interest may be accorded proportionately less significance where it coincides with a strong public interest." N.J. State Chamber of Commerce, supra, 82 N.J. at 68, 411 A.2d 168 (citing Elizabeth Fed. Sav. & Loan Assn. v. Howell, 24 N.J. 488, 499, 132 A.2d 779 (1957)). In Al Walker, Inc., supra, 23 N.J. at 662, 130 A.2d 372, the Court quoted with approval from Hudson Bergen County Retail Liquor Stores, Ass'n. v. Bd. of Comm'rs of Hoboken, 135 N.J.L. 502, 510, 52 A.2d 668 (E & A 1947), that "it takes but slight private interest, added to and harmonizing with the public interest to support standing to sue." See also Ridgewood Educ. Ass'n, supra, 284 N.J.Super. at 432-33, 665 A.2d 776.
Based on our "venerable tradition of liberal application of standing criteria . . . particularly in taxpayer suits and the like," id. at 431, 665 A.2d 776, we conclude that plaintiffs' standing is readily apparent. The individual plaintiffs were personally involved with the unsuccessful effort to have the Hoboken City Council enact meaningful pay-for-play legislation as well as the initiative which resulted in forcing the matter onto the ballot where it was overwhelmingly approved by the voters. Each of the individual plaintiffs was a key player in that effort and, as a result, has an established and abiding interest in the effective enforcement of the Ordinance. In no sense could they be described as interlopers or intermeddlers in this endeavor. If Hoboken, through its elected officials, chooses to forego enforcement of this law, then who will force them to do so? The question answers itself. We see the present action as a legitimate effort to effectuate the will of the people as reflected in the initiative which led to the Ordinance.
The complaint, as amended, sought to compel the individual defendants to report to the City Council contributions to their campaigns which violated the Ordinance, and to compel defendants, including the City, to enforce the Ordinance, which itself contains no enforcement mechanism. While Hoboken's Faulkner Act form of government places general responsibility for enforcement of ordinances on the Mayor, N.J.S.A. 40:69A-40(a), with oversight by the City Council, N.J.S.A. 40:69A-36(c), -37(a), we inquired at oral argument as to the identity of any specific official in the City government charged with responsibility for enforcement of this Ordinance. Defense counsel replied that none could be identified. On the other hand, plaintiffs *164 have alleged that the City "has refused to enforce the ordinance despite repeated requests to do."
Under these circumstances, the individual plaintiffs surely have that "slight additional private interest," Salorio, supra, 82 N.J. at 491, 414 A.2d 943, coupled with the "great public interest," ibid., N.J. Chamber of Commerce, supra, 82 N.J. at 68, 411 A.2d 168, in enforcement of the "pay to play" ordinance to provide the required standing to bring this action. We need not decide whether "mere taxpayer" status alone would suffice. See Ridgewood Educ. Ass'n, supra, 284 N.J.Super. at 432, 665 A.2d 776; Booth supra, 50 N.J. at 305, 234 A.2d 681. Here, plaintiffs Crozier, DuVal and Vance were members of the Committee of Petitioners who participated in the successful effort to gather the signatures necessary to place the initiative petition on the ballot, which ultimately led to enactment of the Ordinance. Graham, as noted, is President of POG, an organization that has as one of its primary objectives enforcement of the Ordinance and was plaintiff in prior litigation which forced Hoboken to place the initiated ordinance on the ballot.
Hoboken Env't Comm., Inc. v. German Seaman's Mission of N.Y., 161 N.J.Super. 256, 391 A.2d 577 (Ch.Div.1978), involved an effort to block destruction of a historic building in, coincidentally, Hoboken. The plaintiff organization was "a group of residents and taxpayers . . . dedicated to the promotion and preservation of the historical, cultural and aesthetic assets of Hoboken." Id. at 259, 391 A.2d 577. Plaintiff Manogue was a citizen and taxpayer of Hoboken and chairperson of the plaintiff organization. In refusing to dismiss the action on the basis of plaintiffs' lack of standing, Judge Kentz phrased the issue as being "whether citizens and residents of a community or an organization which represents such individuals may bring an action to enforce acts which are violative of legislation protecting historic sites and districts." Id. at 263, 391 A.2d 577.
Adverting to many of the authorities cited earlier in this opinion, he held as follows:
The facts reveal that plaintiff Helen Manogue is a citizen and resident of Hoboken. The demolition of the Mission building could have broad ramifications upon the efforts of the State and Hoboken to revitalize and preserve historical areas. This plaintiff is interested in assuring that the plans for the historic preservation of Hoboken are carried out. This interest, when coupled with the substantial public interest and the significant impact that demolition of the Mission building would have upon the state and municipal plans, gives her standing to bring this suit.
[Id. at 265, 391 A.2d 577.]
Much the same could be said of the plaintiffs in the present action. Of course, we recognize that it is one thing to seek to restrain municipal action, as in Hoboken Env't Comm., and another to seek to have the municipality take action, as here. However, in a real sense, defendants' lack of action is action. If lack of enforcement leads to illegal campaign contributors gaining municipal work, that result is every bit as much action, as to which taxpayer standing is generally recognized.
The Law Division judge placed primary reliance on Garrou v. Teaneck Tryon Co., 11 N.J. 294, 94 A.2d 332 (1953). Defendants continue to rely on Garrou on this appeal, as well as Wildlife Preserves, Inc. v. Poole, 84 N.J.Super. 159, 201 A.2d 377 (App.Div.1964) and Colon v. Tedesco, 125 N.J.Super. 446, 311 A.2d 393 (Law Div. 1973), both of which cite Garrou. In particular, the judge cited Garrou for the proposition that "in cases which do not *165 involve a constitutional challenge to legislation, a plaintiff bringing a cause of action in his capacity as a taxpayer must allege special damages." Garrou involved an action by a property owner to enjoin defendants from utilizing a parcel of land abutting his property for a parking lot in conjunction with a proposed shopping center. While the land to be utilized for the shopping center was in a business zone, the lot for the parking area was in a residential zone. Garrou, supra, 11 N.J. at 296-97, 94 A.2d 332. In addition to injunctive relief, plaintiff sought to compel the municipality to enforce its zoning ordinance. Id. at 298, 94 A.2d 332. In a portion of its opinion the Court addressed defendants' argument "that plaintiff has no standing to obtain an equitable injunction against violation of the zoning ordinance." Id. at 300, 94 A.2d 332. In the passage relied on by the trial judge here, the Court said:
The plaintiff is not acting simply as a citizen or taxpayer of the community in his quest to prevent further violation of the zoning ordinance. He is a property owner whose home adjoins the premises where the violation is occurring and he alleges special damages in that he and his family are being discommoded and his property depreciated. His interest is distinct from and greater than that of the community as a whole and we perceive no reason for denying him fair opportunity to vindicate and protect that interest; we consider that such denial would not only operate unjustly as to him but would also retard the public interest. Cf. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250, 258, 84 A.2d 715 (1951).
In [The Mayor & Council of Alpine] v. Brewster, 7 N.J. 42, 52, 80 A.2d 297 (1951), this court recently recognized the general rule that an individual may obtain an equitable restraint against violation of a zoning ordinance where he has "sustained special damage over and above the public injury." This rule is well established in other jurisdictions (129 A.L.R. 885 (1940)) and has properly been applied in our Chancery Division under circumstances comparable to those presented in the instant matter. See Frizen v. Poppy, 17 N.J.Super. 390, 393, 86 A.2d 134 (Ch.Div.1952); Yanow v. Seven Oaks Park, Inc., 15 N.J.Super. 73, 80, 83 A.2d 28 (Ch.Div. 1951). See also Stokes v. Jenkins, 107 N.J.Eq. 318, 152 A. 383 (Ch.1930). We are satisfied that the plaintiff's showing was sufficient to withstand the motion of the private defendants to dismiss for lack of standing to enjoin.
[Id. at 300, 94 A.2d 332.]
We do not find the holding in Garrou as dispositive of plaintiffs' standing in this case. Clearly, the facts of Garrou bear little similarity to the scenario present here. If at all, Garrou speaks only to the private interest required to enjoin violation of a zoning ordinance. Indeed, in Kozesnik, supra, 24 N.J. at 177, 131 A.2d 1, the Court cited Garrou, along with other authorities, for the proposition that, "we have recognized a broad right in taxpayers and citizens of a municipality to seek review of local legislative action without proof of unique financial detriment to them." And, in Al Walker, Inc., supra, 23 N.J. at 663, 130 A.2d 372, the Court quoted with approval Judge Conford's opinion in Koch v. Borough of Seaside Heights, 40 N.J.Super. 86, 93, 122 A.2d 250 (App.Div.), aff'd, 22 N.J. 218, 125 A.2d 402 (1956), that "[i]t is now firmly held that an action to vindicate the right of the public to honest and faithful rendition of services by public officials will lie at the instance of a citizen taxpayer totally apart from considerations of pecuniary prejudice to the body politic." (citations *166 omitted). Notably, among the cases cited by Judge Conford was Garrou.
Thus, we find defendants' reliance on Garrou to be unpersuasive. Similarly, Wildlife Preserves, supra, 84 N.J.Super. at 160, 201 A.2d 377, does little more than cite Garrou, while noting that the trial court there had found standing on the part of plaintiff seeking enforcement of a zoning ordinance, but rejected plaintiffs' claims on its merits. Colon, supra, 125 N.J.Super. at 455-56, 311 A.2d 393, likewise adds little to the argument, finding that the migrant farm worker plaintiff had standing to seek relief in the form of prohibiting the continued operation of a migrant labor camp as a public nuisance.
To summarize, the individual plaintiffs in this case of great public interest have sufficient private interest to confer standing to prosecute this suit. Measuring "plaintiffs' status in the case against the essential purposes of the standing doctrine in New Jersey [which is] to assure that the invocation and exercise of judicial power in a given case are appropriate," we conclude that "the relationship of plaintiffs to the subject matter [is] . . . such to generate confidence in the ability of the judicial process to get to the truth of the matter and in the soundness of the final adjudication." New Jersey State Chamber of Commerce, supra 82 N.J. at 69, 411 A.2d 168. Further, according plaintiffs standing in this case "serves to fulfill the paramount judicial responsibility of a court to seek [a] just and expeditious determination [ ] on the ultimate merits of [a] deserving controversy." Ibid. We discern no "counterbalancing consideration," Taxpayers Ass'n of Cape May v. City of Cape May, 2 N.J.Super. 27, 32, 64 A.2d 453 (App.Div.1949). Our holding is not likely to "result in a flood of proceedings which will hamper the conduct of the public business." Ibid.; see Crescent Park, supra, 58 N.J. at 107, 275 A.2d 433 (citing and quoting Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859, 872 (D.C.Cir.1970)).
Because of the individual plaintiffs' standing, the organizational plaintiff, POG, of which they are members, has standing as well. Crescent Park, supra, 58 N.J. at 109-11, 275 A.2d 433; Common Cause v. N.J. Election Law Enforce. Comm'n, 74 N.J. 231, 377 A.2d 643 (1977).
In light of our disposition, we have no need to address the merits of the controversy. Defendants have devoted a considerable portion of their brief to arguing that contributions alleged to violate the ordinance do not in fact do so, that plaintiffs' claims are barred by the statute of limitations, that the Ordinance is void as unconstitutionally vague, and that indispensable parties were not joined in the litigation. Plaintiffs have responded to those arguments in their reply brief. However, the Law Division judge did not address these contentions because of his conclusion that plaintiffs lacked standing. All of these issues are to be considered by the judge on remand, at which time the judge may also reconsider plaintiffs' motion to further amend the complaint.
Reversed and remanded.
NOTES
[1] POG now asserts that it has been incorporated since September 1, 2005.
[2] We do not suggest that Crescent Park was the modern Supreme Court's first word on standing. See Al Walker, Inc. v. Stanhope, 23 N.J. 657, 130 A.2d 372 (1957); Kozesnik v. Twp. of Montgomery, 24 N.J. 154, 131 A.2d 1 (1957); Booth v. Bd. of Adj. of Rockaway, 50 N.J. 302, 234 A.2d 681 (1967).