**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0657-18T2

STONE & MAGNANINI, LLP,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

UNITED AIRLINES,

    Defendant-Respondent/
    Cross-Appellant.

_____

        Argued January 12, 2021- Decided January 28, 2021

        Before Judges Mayer and Susswein.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. DC-021536-17.

        Robert A. Magnanini and Julio C. Gomez argued the cause for appellant (Stone & Magnanini, LLP, attorneys; Robert A. Magnanini, of counsel and on the briefs).

        Lauren F. Iannaccone argued the cause for respondent (Connell Foley, LLP, attorneys; Jeffrey W. Moryan, of counsel and on the briefs; Lauren F. Iannaccone, on the briefs).

PER CURIAM

Plaintiff Stone & Magnanini LLP appeals from a May 30, 2018 order granting summary judgment in favor of defendant United Airlines and a June 8, 2018 order denying as moot its motion to suppress defendant's answer. Defendant cross-appeals from an August 27, 2018 order denying its motion for attorney's fees and costs. We affirm the orders on appeal and cross-appeal.

The material facts are undisputed. Every year, plaintiff, a law firm, organizes a retreat for its employees and their families. Plaintiff pays the expenses associated with the retreat, including transportation and lodging.

In 2017, plaintiff scheduled a three-day retreat at a hotel in Key Biscayne, Florida. Plaintiff, using a travel agent, bought airline tickets from defendant for a flight scheduled to depart for Miami, Florida on Friday, February 10, 2017. The tickets were issued in the names of plaintiff's employees and their family members.

On the flight date, some of plaintiff's employees arrived at the airport with their families two hours prior to departure. However, the tickets listed an

2

incorrect gate number.  Because the flight was overbooked,[1] one of plaintiff's employees sent an email at 7:23 a.m. instructing "everyone . . . [to] get to gate asap."

The flight was scheduled to depart at 7:59 a.m. and, pursuant to the Contract of Carriage, defendant reserved the right to deny boarding to anyone not present "at the loading gate . . . at least [fifteen] minutes prior to scheduled departure."  On this particular flight, anyone arriving at the gate after 7:44 a.m. was not guaranteed a seat on the airplane.

Defendant's representative certified several ticket holders, constituting four separate families, "were not in the loading area and . . . did not board the flight prior to 7:44 a.m."  Therefore, those seats, nine in total, were released after the deadline.  However, between 7:45 a.m. and 7:55 a.m., one family boarded the flight before the doors to the aircraft closed at 7:55 a.m.  Three families (collectively, the late passengers), totaling five ticket holders, missed the flight.

One of the employees who missed the flight, Alex Barnett-Howell, testified he did not recall the "precise" time he arrived in the boarding area, but

---

[1] Defendant's written contract, entitled Contract of Carriage, stated, "[a]ll . . . flights are subject to overbooking."

A-0657-18T2

"believe[d] it was . . . between 7:30 and 7:40."  Barnett-Howell explained one family ahead of his family at the boarding gate "had already boarded the plane."  Because the flight had not departed, Barrett-Howell asked the gate agent if his family could board the flight.  He was told his "seat[] was gone [and] there was no way to board . . . ."

During deposition, plaintiff's managing partner, Robert A. Magnanini, testified he witnessed defendant board "standby people" on the flight earlier than fifteen minutes before the scheduled departure.  Magnanini believed the seats belonging to the late passengers were occupied by defendant's off-duty crew members.

Defendant offered to accommodate the late passengers by placing them on a later flight.  One of the late passengers sent an email to Magnanini at 8:16 a.m., advising all of the late passengers were on "standby" for a flight scheduled to leave Newark Liberty International at 1:30 p.m.  Magnanini responded:

> I think we walked on the flight at 7:41 and I told [the gate agent] that you guys were still coming.  [T]he gate agent said OK fine and then proceeded to load a bunch of people into your seats . . . .  PS, someone start researching how to sue [defendant] for this.

About two hours later, a different late passenger emailed Magnanini that the 1:30 p.m. flight was "completely booked," and "[the] earliest [defendant]

4

[could] get us [a] guaranteed seat [was] for [Saturday] night, which seem[ed] pointless." Two families arranged for Jet Blue flights on the original flight date but arriving at the Fort Lauderdale airport instead of the Miami airport. Another family booked a flight with defendant to Fort Lauderdale, departing Saturday morning. Since the late passengers arrived in Fort Lauderdale rather than Miami, plaintiff arranged ground transportation to drive them to Key Biscayne. In addition, plaintiff extended the retreat and its stay at the hotel for one day to accommodate the late passengers.

On March 17, 2017, plaintiff, through Magnanini, sent a letter to defendant seeking a $11,231.40 for charges it was "forced . . . to incur" on flight tickets, ground transportation, and lodging. Plaintiff's letter advised if the matter was not "resolve[d] . . . efficiently as possible," it would "move to protect [its] rights."

On March 29, 2017, defendant's representative telephoned plaintiff and spoke to plaintiff's office assistant. According to her notes, defendant's representative indicated the following:

> Apologized for the disruption . . . . Advised her unable to refund JetBlue tickets, (customer made alternate reservations on their own)[.] Provided Refund Services link . . . to request refund for unused portion of [Mr. Barnett-Howell's ticket] already applie[d] for the refund, and refunded [$]281.89. Change fees are non-

refundable, and [defendant] does not cover additional expenses at destination, ground or hotel accommodations.

Defendant's representative explained defendant could authorize $350 e-vouchers to the "[five] . . . customer[s] that were inconv[enienced]." Plaintiff's office assistance said she would talk to Magnanini and report back. The office assistant asked about pursuing legal action and defendant's representative advised, "Please know that our Legal Department is responsible for reviewing only those cases that have been filed in court. All legal documents should be served upon United's registered agent . . . ."

The next day, plaintiff's office assistant contacted defendant's representative and explained she would confirm, via email or telephone, whether defendant's offered vouchers could be issued. Three weeks later, plaintiff's office assistance sent an email to defendant's representative, authorizing credits in the amount of the $350 to be issued to the "individual []email address[es]" of late passengers. That same day, plaintiff's office assistant emailed the late passengers, informing they "will receive an e-voucher from [defendant] as compensation for [their] experience on February 10, 2017." The next day, the late passengers received defendant's e-vouchers.

On October 18, 2017, plaintiff filed a Special Civil Part complaint against defendant, demanding damages in the amount of $11,751, excluding attorney's fees and costs. Plaintiff asserted claims for of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Defendant filed an answer and amended answer asserting several affirmative defenses, including plaintiff's lack of standing, preemption under federal law, and accord and satisfaction. In addition, defendant served a frivolous litigation letter, "demand[ing] . . . voluntary dismissal of [the] claims . . . in accordance with R[ule] 1:4-8 and/or N.J.S.A. []2A:15-59.1 as the allegations set forth . . . are improper, groundless and not supported by any existing law . . . ."

Defendant moved for summary judgment. Three days prior to argument on defendant's motion, plaintiff filed an "emergent" motion to strike defendant's answer pursuant to Rule 4:23-5(a)(1) and impose sanctions.

On May 25, 2018, the motion judge heard counsels' arguments on the summary judgment motion. On May 30, the judge entered an order granting summary judgment and dismissing plaintiff's complaint. The judge found plaintiff lacked standing to file the lawsuit and plaintiff's claims were barred by the doctrine of accord and satisfaction and preempted by the Airline Deregulation Act (Act), 49 U.S.C. §§ 1301 to 1557.

On plaintiff's lack of standing, the judge determined the claims failed because plaintiff was never an actual party to the Contract of Carriage and the airline tickets were issued in the name of each individual passenger. The judge noted the "terms and conditions under which the tickets were issued stated that '[defendant's] obligations hereunder extend only to the [t]icketed [p]assenger. There are no third-party beneficiaries to these rules.'" Despite plaintiff paying for the tickets, the judge concluded it "did so through travel agents, thereby removing themselves yet another layer from the dispute between the contracting parties."

The judge further determined even if plaintiff had standing, the matter "must be dismissed under the theory of accord and satisfaction." The judge acknowledged plaintiff initially rejected travel vouchers "as compensation during pre-complaint settlement negotiations" but after filing suit, defendant "offered travel vouchers to the [p]laintiff" and the vouchers were accepted. He highlighted language in the vouchers, finding "[b]y accepting these travel certificates, you release [defendant] . . . from any and all liability, claim or damages resulting or arising from the matters related to your flight, compensation therefore or any related complaint." In addition, defendant's email transmitting the vouchers to the individual ticketholders "contained a

'RELEASE OF LIABILITY' section" that repeated the aforementioned release language. As a result, the judge held:

> it was clearly the intent of the [d]efendant that acceptance of the travel vouchers would constitute full and final resolution of the claim. It is uncontested that the [p]laintiff received the vouchers and then took the affirmative step of distributing the vouchers to its employees. The [p]laintiff furthermore advised its employees that the vouchers were 'compensation for your experience on February 10, 2017. When you receive your voucher, please let me know so that I may include it in the Firm Retreat file.'

Reviewing the facts and inferences in the light most favorable to plaintiff, the judge determined "[p]laintiff's receipt and subsequent distribution of the travel vouchers settled the dispute and as such, bar[red] the instant complaint."

The judge then addressed preemption of plaintiff's claims under the Act. He found the claims were preempted consistent with Rosen v. Cont'l Airlines, Inc., 430 N.J. Super. 97, 105-06 (App. Div. 2013) (holding the Act's use of the term "service" "includes contractual features of airport transportation, including 'ticketing, boarding procedures . . . .'"). Accordingly, the judge concluded "federal law . . . preempt[s] the [p]laintiff's state law claims . . . ."

Because the judge granted summary judgment in favor of defendant and "dismissed with prejudice" plaintiff's complaint, he denied plaintiff's discovery motion as moot. On June 15, 2018, the judge issued a written decision,

explaining his reasons in support of summary judgment. In August 2018, the judge denied defendant's motion for attorney's fees and costs, concluding "the claims brought by the [p]laintiff were not frivolous, were not brought in bad faith and were not meant to harass [d]efendant . . . ."

On appeal, plaintiff argues the judge erred in dismissing its complaint with prejudice. Plaintiff also contends the judge mistakenly denied its motion to suppress defendant's answer and impose sanctions. We disagree.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. Super. 501, 511 (2019). A court should grant summary judgment "when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995)); see also R. 4:46-2(c). If the evidence presented "show[s] that there is no real material issue, then summary judgment should be granted." Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987).

The motion judge provided three reasons in support of his summary judgment decision. We disagree with the judge's determination that the Act preempted plaintiff's state law claims. However, we are satisfied the judge correctly concluded plaintiff lacked standing and its claims were barred by the doctrine of accord and satisfaction.

We first address plaintiff's standing argument. "The concept of standing in a legal proceeding refers to a litigant's 'ability or entitlement to maintain an action before the court.'" N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 291 (App. Div. 2018) (quoting People for Open Gov't v. Roberts, 397 N.J. Super. 502, 508-09, (App. Div. 2008)). As a threshold determination, "[a] lack of standing . . . precludes a court from entertaining any of the substantive issues" raised by a litigant. Ibid. (quoting EnviroFinance Grp. v. Envtl. Barrier Co., 440 N.J. Super. 325, 339 (App. Div. 2015)).

"A litigant has standing only if the litigant demonstrates 'a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision.'" Edison Bd. of Educ. v. Zoning Bd. of Adj. of the Twp. of Edison, 464 N.J. Super. 298, 306 (App. Div. 2020) (alterations in originals) (quoting Jen Elec., Inc. v. Cty. of Essex, 197 N.J. 627, 645 (2009)).

A-0657-18T2

Here, defendant's Contract of Carriage provided:

> For passengers travelling in interstate transportation points within the United States, subjected to the exceptions in section d) below, [United Airlines] shall pay compensation to [p]assengers denied boarding from an [o]versold [f]light at the rate of 200% of the fare to the [p]assenger's first [s]topover or, if none, [d]estination, with a maximum of 675 USD if [United Airlines] offers [a]lternate [t]ransportation that, at the time the arrangement is made, is planned to arrive at the [p]assenger's [d]estination or first [s]topover more than one hour but less than two hours after the planned arrival time of the [p]assenger's original flight.

Section d) specified:

> [a] [p]assenger denied boarding involuntarily from an [o]versold [f]light shall not be eligible for denied boarding compensation if: . . . (vii) [t]he [p]assenger does not present him/herself at the loading gate for boarding at least [fifteen] minutes prior to scheduled domestic departures.

The language in defendant's Contract of Carriage clearly stated defendant only owed its "[p]assengers" compensation if "denied boarding." The term "denied boarding" did not include domestic passengers who failed to arrive at the board gate fifteen minutes prior to departure. In addition, the Contract of Carriage expressly provided defendant's "obligations . . . extend[ed] only to the [t]icketed [p]assenger. There are no third-party beneficiaries . . . ."

12

The term "passenger" was defined as "any person, except members of the crew, carried or holding a confirmed reservation to be carried in an aircraft with the consent of the carrier." Regardless of who paid for a passenger's ticket, defendant was only liable for actual damages suffered by the individual whose name appeared on the ticket.

Here, plaintiff was not a party to the Contract of Carriage and therefore did not suffer "real adverseness" related to the asserted claims. Because third-party beneficiaries were not entitled to relief under defendant's Contract of Carriage, the judge was not required to analyze plaintiff's status as a third-party beneficiary. On this record, we discern no basis to disturb the judge's summary judgment decision based on plaintiff's lack of standing.

We next consider plaintiff's argument the judge erred in dismissing its complaint based on the doctrine of accord and satisfaction.

"The traditional elements of an accord and satisfaction are the following: (1) a dispute as to the amount of money owed; (2) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount; (3) acceptance of satisfaction by the creditor." A.G. King Tree Surgeons v. Deeb, 140 N.J. Super. 346, 348-49 (Cty. Dist. Ct. 1976) (citing U.S. for the Use of Glickfeld v. Krendel, 136 F.Supp. 276, 282 (D.N.J. 1955)). "[A]n

accord and satisfaction requires a clear manifestation that both the debtor and the creditor intend the payment to be in full satisfaction of the entire indebtedness." Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 463 (App. Div. 1997).

Here, there is no dispute the first two elements governing the doctrine of accord and satisfaction were satisfied. Regarding the first element, plaintiff claimed it was owed money damages flowing from the late passengers' inability to board defendant's aircraft. Regarding the second element, defendant's voucher included a "RELEASE OF LIABILITY" provision, stating "By accepting this travel certificate you release United; the operating carrier; and their respective employees, agents and representatives from any and all liability, claims or damages resulting or arising from the matters relating to your flight, compensation therefore or any related complaint." Based on the language in the voucher, the judge correctly found "it was clearly the intent of . . . [d]efendant that acceptance of the travel vouchers would constitute full and final resolution of the claim."

Plaintiff claims the third component of the doctrine of accord and satisfaction was not met as the claimed acceptance of defendant's vouchers was not established. Based on our review of the record, defendant's representative

offered vouchers to the late passengers.  Defendant's representative confirmed plaintiff would contact defendant once there was a decision regarding the vouchers.  Two weeks after the voucher offer was conveyed, defendant's representative had not heard from plaintiff and the vouchers were not sent to the late passengers.

Thereafter, on April 20, 2017, plaintiff called defendant's representative and authorized defendant to process the vouchers.  Later that day, the late passengers received an email from plaintiff's office assistant,[2] stating "In [one to two] business days, you will receive an e-voucher from [defendant] as compensation for your experience on February 10, 2017.  When you receive your voucher, please let me know so that I may include it in the Firm Retreat file."  On the day the office assistant sent this message to the late passengers, defendant emailed the vouchers.  If plaintiff did not wish to accept the vouchers in full satisfaction of the dispute, it would not have authorized defendant to send the vouchers to be distributed to the late passengers.[3]  Moreover, during his

---

[2] Plaintiff's partner, Robert Magnanini, received a copy of the office assistant's email.

[3] In its reply brief, plaintiff included an email "inadvertently left out" of record before the trial court.  According to that email, plaintiff's office assistant advised defendant's representative that "[plaintiff] reserve[s] the right to pursue further

deposition, Magnanini acknowledged awareness of the office assistant's communications with defendant and defendant's issuance of the vouchers to the late passengers. Further, there was no evidence in the record the late passengers attempted to return the vouchers or declined acceptance of the vouchers as compensation for damages suffered.

We are satisfied the judge properly concluded the doctrine of accord and satisfaction barred plaintiff's claims. The credible and unrefuted evidence supports the finding the late passengers accepted the vouchers as compensation and therefore barred plaintiff's lawsuit.

The remainder of plaintiff's arguments related to the motion judge's orders are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

We next review defendant's cross-appeal asserting the judge erred in denying its request for attorney's fees and costs. As the prevailing party, defendant argues it should have been awarded attorney's fees and costs pursuant to Rule 4:42-8, Rule 1:4-8, and N.J.S.A 2A:15-59.1. Defendant contends plaintiff's claims were "frivolous" and "legally unsupportable."

---

legal action to recover the entire amount requested." Our review is limited to the record before the trial court and therefore we do not consider this document. Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997); see also R. 2:5-4.

Generally, "New Jersey . . . requires litigants to bear their own litigation costs, regardless of who prevails." Kamienski v. State, Dep't of Treasury, 451 N.J. Super. 499, 521 (App. Div. 2017). "Nonetheless, 'a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract.'" Ibid. (quoting Packard–Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)).

N.J.S.A 2A:15-59.1(a)(1) provides:

> A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.

A trial court may determine an action was frivolous if the claim "was commenced, used or continued in bad faith" or " [t]he nonprevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument . . . ." N.J.S.A 2A:15-59.1(b)(1) to -(2).

We review a decision addressing a request for attorney's fees under this statute for abuse of discretion. Ferolito v. Park Hill Ass'n, Inc., 408 N.J. Super. 401, 407 (App. Div. 2009). Here, the judge was "satisfied that the claim[s]

17

brought by . . . [p]laintiff were not frivolous, were not brought in bad faith and were not meant to harass . . . [d]efendant . . . ."  After reviewing the record, we discern no abuse of discretion in the judge's denial of defendant's request for attorney's fees and costs.

Affirmed as to the appeal and cross-appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-0657-18T2