**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3905-23

KIMBERLY A. VELE,

     Plaintiff-Respondent,

v.

BOROUGH OF ENGLEWOOD
CLIFFS, and LAURA BORCHERS,
Custodian of Records for BOROUGH
OF ENGLEWOOD CLIFFS,

     Defendants-Respondents.

_____

MARIO M. KRANJAC,

     Appellant.

_____

Submitted October 2, 2025 – Decided October 15, 2025

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4752-21.

Kranjac Tripodi & Partners, LLP, attorneys for appellant Mario M. Kranjac (Joseph Tripodi, on the brief).

Respondents have not filed a brief.

PER CURIAM

Appellant Mario M. Kranjac appeals from a May 29, 2024 order denying his motion to vacate prior orders sanctioning him for failing to comply with the court's orders, and compelling him to turn over emails and other information under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. He also challenges a July 29, 2024 order denying his motion for reconsideration. We reverse and remand for the reasons expressed in this opinion.

Kranjac served as mayor of the Borough of Englewood Cliffs from January 1, 2016 to December 31, 2023. He is also a partner at the law firm Kranjac Tripodi & Partners, LLP (KTP), and a member of Dynamk Capital LLC (Dynamk), a private equity firm. This matter stems from a dispute over the use of his KTP, Dynamk, and personal Gmail email accounts to conduct his mayoral duties.

On May 20 and 21, 2021, plaintiff Kimberly Vele filed OPRA requests for records maintained by the Borough, including email communications sent and received by Kranjac associated with his position as mayor, or through KTP concerning Lisette Duffy, the Borough Clerk, from January 1, 2018. Laura Borchers, Deputy Borough Clerk, responded via email to plaintiff on June 1,

2021, stating the requests were denied because "both fail to identify specific government records and are considered vague and/or ambiguous requests."

On June 4, plaintiff responded to simplify the requests. She sought copies of all emails by or between Kranjac and the acting Borough Administrator (BA) regarding the BA's appointment. Plaintiff's request specified two email addresses for Kranjac, one associated with his position as mayor, and another associated with KTP. The Borough denied the request, noting it was "vague and/or ambiguous" as well as "excessive in that it seeks records spanning over a period of fourteen . . . years."

On June 10, plaintiff sent another request for: emails between Kranjac and the acting BA regarding Duffy; emails between Kranjac and the Borough Council President regarding Duffy; emails between Kranjac and the Council President regarding the appointment of the acting BA; and emails between Kranjac and the acting BA regarding the acting BA's appointment. The Borough denied the request for the emails because it was "vague and/or ambiguous" and "excessive." The response further advised there were no records of emails between Kranjac and the Council President regarding the acting BA's appointment, or emails between Kranjac and the acting BA regarding her appointment.

A-3905-23

On July 16, plaintiff filed a complaint against the Borough and Borchers, in her capacity as the Borough custodian of records. The two-count complaint alleged defendants violated OPRA by failing to produce the requested records.

On September 9, 2021, the trial court found defendants had improperly denied plaintiff's requests and plaintiff was entitled to attorney's fees as the prevailing party. On January 12, 2022, the court granted plaintiff's motion to enforce the September 2021 order and ruled, if the documents were not produced within ten days, defendants would be sanctioned $250 per day.

On June 24, 2022, because of another enforcement motion, the court ordered the Council President, the acting BA, and Kranjac to file Paff[1] certifications, certifying that they "conducted thorough and complete searches for all responsive documents and found no responsive emails searched." It also ordered sanctions of defendants at $250 per day, after July 8, 2022, for each day they failed to either produce the emails or the Paff certifications.

On August 4, 2022, the court entered another order sanctioning defendants $250 for every day they failed to produce the emails or certifications. On August 11, Kranjac certified he directed his firm to search his email accounts for

---

[1] Paff v. N.J. Dep't of Lab., 392 N.J. Super. 334, 341-42 (App. Div. 2007).

documents relating to the OPRA requests and provided a thumb drive of the relevant emails to the Borough's special counsel.

Plaintiff moved to enforce litigant's rights and defendants cross-moved for relief from the June and August orders. On September 12, 2022, the court entered an order vacating its prior ruling that the Council President file a certification because it was moot, as defendants complied with its order by providing Kranjac and the acting BA's Paff certifications. The court also vacated the sanctions imposed under its August order.

Plaintiff moved for reconsideration, arguing the Paff certifications were deficient. On October 28, 2022, the court granted reconsideration, ordered defendants to produce documents responsive to the OPRA requests and imposed sanctions totaling $7,250. The court reasoned it was not enough for Kranjac to have directed KTP to search his email; he needed to "certify to his own personal knowledge of the search conducted," and "include a statement regarding his law firm's policy for document retention/destruction." It noted Kranjac mixed his personal, business, and government emails in violation of a previous order and concluded those emails were subject to disclosure under OPRA.

On December 8, 2022, Kranjac filed a certification, which clarified he was physically present for the search of his emails and provided details of the search.

5

He certified he did "everything [he] possibly could to comply with the [c]ourt's order."

In January 2023, the Borough counsel's term came to an end. Irene Kim Asbury, Esq. became new Borough counsel. Prior counsel advised Asbury the Borough's special counsel would be transferring ongoing matters, including this matter, to Asbury.

On March 15, 2023, plaintiff moved to enforce litigant's rights, claiming defendants had not provided the documents or timely provided Paff certifications from the Council President and Kranjac. The court rejected this argument. However, it reimposed the sanctions because defendants "made it clear . . . compliance will not be freely given; therefore, it must be coerced." Defendants were ordered to pay $38,870 in counsel fees and $38,500 in sanctions. The court also imposed a daily fine of $1,250 if defendants did not comply with its orders within ten days.

On September 7, 2023, the court conducted a conference. Plaintiff alleged the Council President and Kranjac lied in their certifications and should be sanctioned. On September 14, 2023, plaintiff submitted a consent order, signed by plaintiff's counsel and Asbury, which had been approved by the Borough Council. It stated the Council President and Kranjac would "provide their email

account login information and passwords" for personal and professional email accounts and a failure to comply would result in sanctions of $1,250 per day until defendants complied. Asbury explained, during a review of the Borough's search of Kranjac's emails, she discovered he "may have had more than one private email address" containing at least three hundred emails responsive to the OPRA request.

Kranjac objected to the consent order, noting one of the email accounts was for KTP, which contained privileged communications. He also argued the consent order should clarify all sanctions be paid to the court, not plaintiff.

On September 19, 2023, the court entered an order consistent with plaintiff's consent order and directed Kranjac and the Council President provide their email account login information and passwords. The order required Kranjac's login information for his KTP, Dynamk, and Gmail email accounts to the Borough's IT vendor to complete a search for emails and documents responsive to the OPRA request. The order also imposed sanctions of $1,250 per day until defendants complied.

Kranjac moved to vacate the September order, or alternatively, for a stay pending appeal. He certified his previous certifications were truthful and the consent order was submitted without his knowledge or consent.

A-3905-23

On October 24, 2023, the court denied the motion. It also imposed daily sanctions against Kranjac personally until he fully complied with Asbury's requests and she certified to his compliance. The order required Kranjac's compliance within ten days or he would have to appear and "show cause why he should not be held in contempt." The court would also consider referring Kranjac to the Office of Attorney Ethics.

To demonstrate his compliance with the court's October order, Kranjac filed a certification from a partner at KTP, who stated he met with Asbury, logged into Kranjac's KTP, Dynamk, and Gmail accounts, and allowed her to search each account. However, due to security concerns, Asbury certified she advised Kranjac she could not accept a transfer by thumb drive of the responsive emails.

Asbury's search of the KTP account, with parameters set by the OPRA request, yielded 295 emails. None of these emails matched the responsive documents previously provided by defendants or Kranjac.

Asbury certified she was unable to access or review the electronic dataset for Kranjac's KTP or Dynamk accounts as of November 3, 2023, but fifty-four emails from his Gmail account had been forwarded to her firm for review. Four emails from the Gmail search matched those in defendants' previous production.

A-3905-23

Asbury also certified the Council President complied with the October 24, 2023 order, and the results of the search of his email were provided to plaintiff. However, she claimed Kranjac failed to comply.

On November 7, 2023, Kranjac filed an order to show cause to have the court declare he complied with its October 24 order. On November 10, 2023, KTP retained its own information technology (IT) firm to search Kranjac's KTP and Dynamk email accounts. The director of the IT firm filed a certification dated December 19, 2023, stating his firm was given the credentials for Kranjac's email accounts with KTP and Dynamk and exported 343,353 and 49,098 emails, respectively. It then searched the email accounts pursuant to Asbury's instructions and the results were forwarded to a group designated by Asbury.

On November 17, 2023, the court denied Kranjac's order to show cause and increased the sanctions against him from $250 to $350 per day. The court reasoned it could "reach no other logical conclusion other than . . . Kranjac continues to willfully obstruct the lawful production of emails he is required to produce pursuant to OPRA." Kranjac was ordered to appear in person and testify under oath, subject to examination by the court and cross-examination by

Asbury and plaintiff's counsel, "regarding his failure to provide production of subject emails."

On December 1, 2023, Kranjac again moved for an order declaring him in compliance with the October 24 order and for a declaration that no sanctions be entered against him. He certified he did not have administrative access to Dynamk's email account and Dynamk did not grant his request for access. Asbury told the court Dynamk informed her "no search had [yet] taken place . . . of their servers."

On December 5, 2023, Kranjac's counsel asked Asbury to confirm Kranjac complied with the court's order because she had the KTP production and was in contact with Dynamk's counsel for assistance with production. Asbury rejected the request as premature because the review of the dataset had not yet occurred. When Kranjac's counsel asked what more was required to prove his client's compliance, Asbury responded it was Kranjac and his attorney's responsibility to prove to the court his compliance, not hers. She told Kranjac's counsel Kranjac was "dragging his feet, and no amount of beating your chest will eliminate the fact that he illegally withheld documents and was untruthful in [three] certifications filed with the Court. That's your problem. You handle him." Asbury refused to certify Kranjac's compliance with the court's order.

A-3905-23

On December 21, 2023, the court ordered Asbury to represent defendants in this matter and continued the $350 per day sanctions against Kranjac. On January 29, 2024, Kranjac's attorney wrote to the court, alleging nothing more was required of his client to show compliance with the October 24 order. The alleged disobedience of the court's order was concocted by Asbury who was biased and whom the court "appointed as a de facto special [adjudicator] in this case." Counsel urged the court, rather than Asbury, to decide whether Kranjac complied with the court's order. Kranjac's attorney argued his client complied because the order required him to provide his email account login information, which he did, but Asbury decided she had the authority to direct Kranjac's IT firm to conduct a search of his private email, which was not part of the court's order.

The court held a hearing on January 29, 2024. Neither Kranjac nor his attorney appeared, but the court noted the objections contained in his attorney's letter. Plaintiff's counsel noted that in 2019, Kranjac "agreed not to send Borough business to his law firm or partners or anybody else and he . . . blatantly violated" the agreement, which was contained in a court order. Plaintiff's counsel advised the court he deposed Kranjac a few weeks prior who "testified that he sent blind copies [to himself] because he didn't trust the Borough email."

A-3905-23

Asbury told the court while defendants did their best to comply with its orders, Kranjac was not cooperating. "He had adamantly refused to comply with the requests of the defendants . . . [and] there was no other way [to] get any compliance . . . ."

The court referred Kranjac to the Bergen County Prosecutor's Office "to consider whether he should be prosecuted for misconduct in office for willfully obstructing production of documents dealing with government business and whether he perjured himself regarding the OPRA matter." It also referred the matter to the Office of Attorney Ethics for willful interference with the production of government documents and held Kranjac and his attorney in contempt for their failure to appear.

On February 2, 2024, the court entered an order directing Kranjac to pay $32,800 in sanctions; comprised of $6,000, reflecting a daily sanction rate of $250 for twenty-four days of noncompliance, and $26,800 at the increased daily rate of $350 for seventy-six days. The court also continued the sanctions at $350 per day, pending Asbury's certification of compliance.

On March 1, 2024, Kranjac moved for reconsideration or, in the alternative, the trial court's recusal. The court denied his motion and ruled Kranjac "has no standing in this OPRA matter. He is not a party to this action."

On March 12, 2024, Kranjac moved for an order declaring the sanctions against him ended. Asbury opposed the motion noting because he "ha[d] not yet fulfilled his obligations under the previous nineteen . . . [o]rders," including providing "sufficient Paff [c]ertifications." The court denied the motion and declared it would not consider any further motions from Kranjac until he filed an appropriate Paff certification and a Vaughn[2] index.

On April 19, 2024, the Borough appointed Asbury "to provide [s]pecial [c]ounsel services on OPRA matters and litigation matters." On May 8, 2024, the Borough passed another resolution, terminating Asbury "on account of irreconcilable differences over legal strategy." Although she had been terminated, the resolution directed her to complete her review of emails in this matter and provide a written report to the Borough's new counsel. New counsel moved to relieve Asbury as counsel for the Borough and Borchers, and compel Asbury to turn over copies of her files regarding this matter.

On May 24, 2024, Kranjac moved to vacate the orders entered against him for lack of jurisdiction. On May 29, 2024, the court denied his motion, granted plaintiff's cross-motion to enforce litigant's rights, and awarded her attorney's fees and costs on the motion.

---

[2]  Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973).

A-3905-23

Kranjac timely moved for reconsideration and, on July 29, 2024, the court denied his motion and ordered him to pay attorney's fees totaling $27,829.40. Because of Kranjac's failure to comply with the July order, the attorney's fees were reduced to a judgment with interest on September 11, 2024.

I.

Kranjac challenges the trial court's jurisdiction over him because he was neither a party nor a subject of the action. He asserts the court could not sanction him due to the lack of jurisdiction. Kranjac also alleges the court erred when it found he lacked standing.

Kranjac reiterates his claim the court improperly appointed Asbury as de facto special adjudicator and relied on her representations to decide whether he had complied with its orders and to sanction him. He asserts this was an inappropriate delegation of judicial authority and only the Assignment Judge could approve such an appointment. Consequently, Kranjac asks us to vacate the sanctions.

Kranjac also seeks reversal of the sanctions because they are punitive. He argues he provided indisputable evidence of compliance with the court's orders and Asbury's requests. It was not his responsibility to search for the documents sought and the court ignored the evidence he presented of his compliance.

A-3905-23

## II.

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which [they are] not designated as a party or to which [they have] not been made a party by service of process." Hansberry v. Lee, 311 U.S. 32, 40 (1940). "A judgment may, however, be binding upon non-parties in other matters if their interests have been represented by a party." N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 628-29 (App. Div. 2012) (citing Morris Cnty. Fair Hous. Council v. Boonton Twp., 197 N.J. Super. 359, 364-65 (Law Div. 1984)).

A non-party may also be bound if there was a "substantive legal relationship" between them and a party to the action. Taylor v. Sturgell, 553 U.S. 880, 894 (2008) (alteration omitted). Non-parties who have "'assume[d] control' over the litigation in which that judgment was rendered" may be bound by a judgment, because "such a person has had 'the opportunity to present proofs and argument.'" Id. at 895 (alteration in original) (first quoting Montana v. United States, 440 U.S. 147, 154 (1979); and then quoting Restatement (Second) of Judgments § 39 cmt. a, at 382 (A.L.I. 1982)).

A-3905-23

Personal jurisdiction is a question of law. <u>Mastrondrea v. Occidental Hotels Mgmt. S.A.</u>, 391 N.J. Super. 261, 268 (App. Div. 2007). Therefore, our review is de novo. <u>Ibid.</u>

Under OPRA, "email logs on private servers are government records under N.J.S.A. 47:1A-1," and are disclosable when the "emails concern[] government business, sent to or from personal accounts of government officials—if the emails fall within the definition of government records." <u>Rosetti v. Ramapo-Indian Hills Reg'l High Sch. Bd. of Educ. 1</u>, 481 N.J. Super. 1, 4 (App. Div. 2025) (quoting <u>Ass'n for Gov't Resp., Ethics, & Transparency v. Borough of Mantoloking</u>, 478 N.J. Super. 470, 489 (App. Div. 2024)). Courts may compel a third party to produce records made on behalf of the subject of an OPRA request; "to conclude otherwise, a governmental agency seeking to protect its records from scrutiny could simply delegate their creation to third parties or relinquish possession to such parties, thereby thwarting the policy of transparency that underlies OPRA." <u>Id.</u> at 12 (quoting <u>Burnett v. Cnty. of Gloucester</u>, 415 N.J. Super. 506, 517 (App. Div. 2010)). Courts may also compel public employees to search their own accounts for data responsive to an OPRA request. <u>Id.</u> at 14-15 (citing <u>Lipsky v. N.J. Ass'n of Health Plans, Inc.</u>, 474 N.J. Super. 447, 472 (App. Div. 2023)). However, upon a showing of

16

"substantial need," the more invasive option of allowing for a third-party forensic evaluation of devices or accounts may be permitted. Lipsky, 474 N.J. Super. at 473-74.

Pursuant to these principles, there is no doubt the trial court had personal jurisdiction over Kranjac. The September 19, 2023 consent order clearly required Kranjac to provide the "email account login information and passwords" for all three of his email accounts to the Borough's IT vendor to conduct a search for responsive documents. When the court denied Kranjac's motion to vacate the September order, it found Asbury credible. Asbury certified she became aware of the personal email addresses while reviewing Kranjac's Borough email account and even after the entry of the consent order, he refused to search or "address[] . . . the existence of the email addresses."

The court validly believed a more invasive and intrusive solution was necessary, namely, allowing the Borough's IT firm to search the email accounts. When sanctions imposed on the Borough did not produce compliance, the court turned to personal sanctions against Kranjac.

We reject Kranjac's assertion there was no jurisdiction because his interests were not adequately presented. In his official capacity as mayor, Kranjac was obliged to comply with OPRA and Asbury's attempts to assure

17

compliance. It was not until Kranjac's attorney became involved, when he wrote to the court to object to the September 2023 consent order, that one could conclude Asbury was adverse to Kranjac.

III.

It follows from our discussion of personal jurisdiction that Kranjac had standing to contest the court's orders. Standing rules "preclude actions initiated by persons whose relation to the dispute may be described as 'total strangers or casual interlopers,' a threshold we have described as 'fairly low.'" People for Open Gov't v. Roberts, 397 N.J. Super. 502, 509 (App. Div. 2008) (quoting Triffin v. Somerset Valley Bank, 343 N.J. Super. 73, 81 (App. Div. 2001)). A party's lack of standing "precludes a court from entertaining any of the substantive issues presented for determination." In re Adoption of Baby T., 160 N.J. 332, 340 (1999) (citing Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 424 (1991); Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107 (1971)).

A party has standing if they can establish "a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision." Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009) (first alteration in original)

18

(quoting In re Adoption of Baby T., 160 N.J. at 340). Our courts have traditionally taken "a generous view of standing." In re N.J. State Cont. A71188, 422 N.J. Super. 275, 289 (App. Div. 2011).

The imposition of sanctions against Kranjac personally gave him a sufficient stake to ask the court to consider his arguments about whether sanctions were appropriate. The facts also show Kranjac was harmed by the court's adverse rulings because the sanctions mounted, ultimately leading to the entry of a money judgment against him, as well as liability associated with potential criminal and ethics investigations.

"[W]hen considering whether a third party may become directly involved in pending litigation or administrative action, our courts have repeatedly used the phrase 'standing to intervene' as conceptually equivalent to 'standing.'" N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 287 (App. Div. 2018) (collecting cases). Even though Kranjac never filed a formal motion to intervene, one was unnecessary because the court ruled on the substance of his motions for relief from the sanctions before concluding he lacked standing.

For these reasons, we reverse the court's finding Kranjac lacked standing. We next turn to his arguments regarding the sanctions, which also require reconsideration.

IV.

Kranjac argues the sanctions violated Rule 1:10-3 because they were punitive. He claims he provided indisputable evidence of compliance with the court's orders and Asbury's requests, and the court should have terminated the sanctions. Kranjac also asserts the court erred when it found it was his responsibility to conduct searches of his email accounts and refused to terminate the sanctions until he did so to Asbury's satisfaction. He alleges the court ignored several certifications from him and members of his law firm, attesting he complied with Asbury's requests.

"The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott v. Burke, 206 N.J. 332, 371 (2011). "Relief under R[ule] 1:10-3, whether it be the imposition of incarceration or a sanction, is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997).

A condition precedent to granting enforcement under Rule 1:10-3 is a court finding the failure to comply with its orders was unjustified and willful. See P.T. v. M.S., 325 N.J. Super. 193, 206-07, 220 (App. Div. 1999). "[P]unitive or coercive relief under the Rule cannot be used against one who is not a willful

violator of a judgment[] . . . ." In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 18 (2015); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3 (2025) ("Before punitive or coercive relief can be afforded, the court must be satisfied that the party had the capacity to comply with the order and was willfully contumacious.").

The decision to impose sanctions for violating a court order is discretionary. Kornbleuth v. Westover, 241 N.J. 289, 300 (2020) (citing Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005)). A trial court abuses its discretion "when the decision to impose sanctions 'is made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Id. at 300-01 (alterations in original) (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).

Kranjac was sanctioned for noncompliance with the September 19, 2023 order. This order required he provide his "email account login information and passwords . . . to [d]efendants to provide to the Borough's IT Vendor, Ocean IT, and/or another vendor to conduct a complete search . . . within thirty . . . days of this [o]rder, and provide all responsive documents to [p]laintiff within thirty . . . days of receipt from the vendor."

Asbury certified her firm sent requests to Kranjac's counsel for contact information of the IT vendors for KTP and Dynamk on October 27, 2023. She noted Kranjac and his attorney were "responsible for providing access to these accounts" and Kranjac would be sanctioned if she did not get access by Saturday. Kranjac's attorney replied he would provide login credentials for all three accounts; named KTP's IT vendor; supplied the vendor's contact information; and offered to put a KTP partner, the Borough, and the vendor in touch with each other.

Asbury also certified, when she met with the KTP partner on November 1, 2023, he allowed her to conduct searches of the three email accounts once he had logged in and offered her the passwords to Kranjac's email accounts. She refused the login information because "there was no purpose in retaining personal passwords that should be changed on a regular basis." Asbury certified the email portal used by both the KTP and Dynamk accounts was Microsoft Outlook. She also certified Kranjac's Gmail, provided by Google, "does not grant account holders administrative access which would permit metadata extraction," but fifty-four responsive emails were found and forwarded to her firm for review.

Asbury's certification clearly demonstrated Kranjac had complied with the court's orders even though she refused to certify his compliance. If this and Kranjac's representations were not believable, Kranjac had also provided certifications from KTP's IT vendor which certified it: was retained on November 10, 2023; had conducted the court-ordered searches of the KTP and Dynamk email accounts on November 20, 2023; and forwarded them according to Asbury's instructions. On December 6, 2023, Asbury confirmed the "transfer of the dataset has taken place," although the forensic search had not yet been completed. These circumstances did not support the ongoing imposition of sanctions.

On the other hand, we cannot ignore that before KTP's IT vendor's search, the court had ordered Kranjac to appear on December 11, 2023, to answer for his contempt if Asbury did not certify his compliance within ten days, yet he failed to appear. His appearance may have obviated the contempt finding. However, his relationship with Asbury had become adversarial again.

For these reasons, we vacate the December 21, 2023 order and all subsequent orders sanctioning Kranjac, and remand for a hearing to determine the date on which Kranjac demonstrated compliance with the court's order by providing sufficient information regarding the login of his email accounts. The

A-3905-23

court shall have discretion whether to take testimony to decide this issue. Once the court makes this finding, it shall determine what sanctions, if any, are necessary, including for his failure to appear in court.

V.

Finally, Kranjac claims the court delegated its judicial authority to Asbury whom it appointed as a de facto special adjudicator to find the facts and sanctioned him based on whether Asbury certified his compliance with her requests. Kranjac reiterates only the Assignment Judge can appoint a special adjudicator, and the orders imposing and increasing sanctions should be vacated.

Rule 4:41 permits the delegation of judicial authority through the appointment of special adjudicator. The Rule applies only where the Assignment Judge approves the appointment and the parties consent, or where there are extraordinary circumstances. R. 4:41-1.

A special adjudicator is appointed "to report only upon particular issues or to do particular acts or to receive and report evidence only." R. 4:41-3. Courts "evaluate a special [adjudicator]'s factual findings 'in the same manner as [they] would the findings and conclusions of a judge sitting as a finder of fact.'" State v. Henderson, 208 N.J. 208, 247 (2011) (quoting State v. Chun, 194 N.J. 54, 93 (2008)). The role of a special adjudicator is "purely advisory," and

decision-making powers remain with the trial court. Deland v. Twp. of Berkeley Heights, 361 N.J. Super. 1, 12 (App. Div. 2003) (citing S. Burlington Cnty. NAACP v. Twp. of Mount Laurel, 92 N.J. 158, 284-85 (1983)).

Special adjudicators notwithstanding, trial courts have discretion "to craft orders appropriate to the facts before them." N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. Super. 154, 170-71 (App. Div. 2012) (quoting Il Grande v. DiBenedetto, 366 N.J. Super. 597, 621 (App. Div. 2004)). A court is not "required to utilize a particular method—shown to be ineffective—only because it is more tepid than a severe method more likely to gain compliance." Bd. of Educ., Twp. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001).

Asbury was never appointed as a special adjudicator. She represented defendants and had a duty to comply with the court's orders compelling them to abide by OPRA. Although she was required to certify compliance with the court's orders, her actions were all her own and not directed by the court as envisioned by Rule 4:41-3. That Asbury had to certify Kranjac's compliance was a product of his role as mayor and the court's incorrect finding that he lacked standing. However, no judicial authority was delegated to Asbury. The court's orders were a means to achieve defendants' compliance with OPRA.

## VI.

In sum, all orders personally sanctioning Kranjac from December 21, 2023 onwards are vacated. The trial court shall reconsider the issue of sanctions. The court has personal jurisdiction over Kranjac and he has standing to address the issue of the personal sanctions imposed against him.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3905-23